## GEORGE SKATES *v.* THE STATE.

1. CRIMINAL PRACTICE. *Continuance. Absent non-resident witness. Insufficient showing.*

   It is not error for the circuit court to refuse the application of one charged with murder for a continuance of his case on the ground of the absence of a material witness, who is a non-resident of the State, if such application fail to show any other reason for expecting that the absent witness will ever be in attendance upon the court than that based upon the fact that a "part of his family live in this State," and defendant has written offering to pay the expenses of his trip, though no reply to such offer has been received.

2. SAME. *Motion for new trial. Separation of jury. Case in judgment.*

   S. was indicted for murder, was convicted, and moved for a new trial because of an alleged illegal separation of the jury. The evidence on the motion showed that the jury while trying the case was in charge of a bailiff, who permitted some of the jurors to go into a public privy in the yard of the court-house to attend to the calls of nature, while he and the other jurors remained about seventy-five yards away, but out of sight of the jurors in the privy. It was also shown that another deputy sheriff went into the privy while the jurors were there, but he testified that he had no communication whatever with them. It was not shown that any one else was in or about the place, or had any opportunity to communicate with the jurors therein, nor was it affirmatively shown (by competent testimony) that no person did or could communicate with them while they were in the privy. The court overruled the motion for a new trial. *Held,* that the action of the lower court was correct.

3. SAME. *New trial. Exposure of jury to improper influences. Rule.*

   The defendant in such case is not entitled to have the verdict set aside merely

because he shows that the jury was exposed to the *possibility* of being tampered with, and it does not affirmatively appear that no improper influences were brought to bear upon it. Such possibility is not a good ground for vacating a verdict ·unless the circumstances of the particular case create a well-founded suspicion in the impartial judicial mind that unlawful influences have been exerted upon the jury.

4. SAME. *Instruction. Interpreted in the light of evidence.*
  Instructions are to be interpreted by the evidence. And where the facts in a criminal case show a wound inflicted by the defendant on the deceased to have been of a character dangerous to the life of the deceased, it is not a material error for the court to fail to instruct the jury that the defendant can only be found guilty in case the wound was *dangerous.*

5. SAME. *Instructions. When omission cured.*
  Where the instructions to the jury in a criminal case are not conflicting, and considered as a whole correctly announce the law, a conviction will not be set aside because one or more of the instructions for the State ignore a defense interposed by the defendant and which is fully recognized by the defendant's instructions.

APPEAL from the Circuit Court of Hinds County.
HON. T. J. WHARTON, Judge.

In 1880 George Skates was indicted for murder. When his case was called at the February term, 1887, of the circuit court, he applied for a continuance, because of the absence from the State of the physician who attended deceased in his last illness, by whom he expected to prove that the wound inflicted on deceased did not cause or contribute to his death, but that he died of pneumonia. This witness lived in the State of Texas, and the application showed no other ground to believe his attendance could be procured than that a "part of his family lived in this State," and that defendant had written to him offering to pay the expenses of his trip, to which letter no reply had been received.

The evidence for the State disclosed the fact that defendant, being under the influence of liquor, with a drawn pistol assaulted some negroes who were returning in a wagon from the village to their homes in the country. To protect themselves they took hold of his pistol, and a neighbor coming up quieted the defendant for the time. The deceased came up from his house to meet his friends in

the wagon, unconscious of defendant's presence or condition. As soon as defendant saw him he called out, " I will kill you all; I will show you how to catch a man's pistol," and fired on deceased, who instantly fell. The ball passed in at his right nipple and out under his left shoulder. ' Deceased died in four or five days. A physician, who saw him a day or two afterward, stated that he then had pneumonia and had been neglected and improperly treated. This witness in answer to a question by defendant said that if the ball was deflected by the muscles of the chest or a rib and passed around the body under the skin the wound was not a dangerous one, but that he made no examination of the wound and did not know its character. Two witnesses stated that the ball went through the body.

The defendant testified in his own behalf, and stated that as he passed the wagon it was dark ; that one of the parties in it caught his horse by the bridle and demanded his money ; that he drew his pistol and fired, whereupon the person turned loose his horse; that he then started on home, when deceased came up, caught his horse, and tried to take his pistol, and he then fired on him, believing that he was trying to rob or kill him.

By the first instruction for the State the jury was told that unless it believed from the evidence that the defendant had reasonable ground to believe himself to be in danger as to his life or limb at the time he shot he was guilty of murder. Instructions for defendant informed the jury that it must acquit if from the evidence it believed the defendant fired upon deceased from a reasonable apprehension that deceased or his friends were trying to rob him. The court in the third instruction for the State instructed the jury that if defendant inflicted the wound and it was not itself mortal, but from which, being neglected, the party died, the defendant was responsible for the result and the jury should convict. Exception was taken to this instruction by the defendant on the ground that the law should have been stated to be that if a party inflicts a wound " *dangerous* but not mortal," etc.

After conviction defendant moved for a new trial because of misconduct of the jury. It was shown that the jury in a body was

taken by the officer in charge to a privy in the court-yard ; that a part of the jury remained with the officer some seventy-five yards from the privy, while some of the jurors passed into it to attend to calls of nature.   The jurors in the privy were out of sight of their fellows and of the officer in charge.   The privy was a public one. None of the witnesses who testified to the separation of the jury saw any one other than the jurors in or about the privy at that time, except that a deputy sheriff (not the officer in charge of the jury), then went in to another compartment; this deputy was examined as a witness and stated that he held no communication with the jurors.   The witnesses all stated that other persons *might* have been in the privy at that time.   The jury found the defendant guilty of manslaughter, and from the judgment against him he appealed to this court.

*Wells & Williamson,* for the appellant.

1. We recognize to the fullest extent the doctrine that continuances are left to the sound discretion of the court, and that it is only when that discretion is abused that this court will grant a new trial on that account.   We think the case at bar comes fairly in that class of cases where it has been determined that the refusal to grant the continuance is an abuse of that discretion.

The court will perceive that the testimony of this absent witness is a perfect defense to this case—to wit, that the decedent came to his death not from the wound but from pneumonia *not* superinduced by the wound.   The only reason given by the court below why the continuance was not granted was his non-residence.   It has never been decided by this court that the mere non-residence of a witness precluded a continuance on account of his absence. This question has not been passed upon by this court.   But it has been decided in the following cases that continuance under those circumstances will be granted : *Spence* v. *State,* 8 Black. Ind. 284; *Farr* v. *State,* 33 Iowa 554; *U. S.* v. *Little,* 2 Wash. C. C. 159 ; *Welcome* v. *Boswell,* 54 Ind. 298 ; *Gibson* v. *State,* 9 Ib. 264.

. One continuance at least would have worked no injustice to the State, and we think the court manifestly abused the discretion reposed in him, and for that reason a new trial should be awarded

the prisoner. See *Ogle's Case,* 4 George 383; *Lundy's Case,* 44 Miss. 669; *Franks* v. *Wanger,* 3 Cush. 121; *Long* v. *State,* 52 Miss. 34; *People* v. *McCrory,* 41 Cal. 461; *People* v. *Ah Lute,* 53 Ib. 613.

2. The third instruction for the State is in almost the exact words laid down in Greenleaf, and that we believe used in the *Fred. Crum's Case,* 64 Miss. 1. But we think that the doctrine laid down there is rather too broad. If the instruction had *had* the word "dangerous" before the word wound in the first line it would not have been erroneous. A wound might be very insignificant and yet the party might die, and this principle would put the burden of proof on the defendant that the decedent did not die from the wound; that the wound must be a dangerous wound to call forth that principle of law. See 1 Russell on Crimes 701, and note at bottom of page referring to *Parsons* v. *State,* 21 Ala. 300; *Com.* v. *Hackett,* 2 Allen 136; *State* v. *Scott,* 12 La. An. 274; *Livingston's Case,* 14 Grattan 592; *Scale's Case,* 5 Jones N. C. Law 420.

This objection we think is fatal to the first and second instructions also. This was the theory of the defense, that the wound was not a dangerous one, and these instructions, we submit, should have so submitted the question to the jury. The proof on that subject in this case is that if the ball entered the cavity then it was dangerous, if it passed around it was not.

3. Section 2878, Code 1880 (and the same section is in Code 1871), makes homicide justifiable in resisting any attempt to commit any felony upon the slayer, or where he has reasonable ground to apprehend a design to commit such felony. One of the defenses in this case was that the defendant apprehended a design to rob him, and that is by our statute made a felony. See § 2674, Code 1871.

4. We insist that it was error for the jury to separate during the progress of the trial, as was permitted to be done in this case, and the court erred also in permitting the jury to be examined as witnesses to sustain their verdict.

In support of the first of these propositions we refer to *McQuillan's Case,* 8 S. & M. 587, and *Wood's Case,* 43 Miss. 364.

They separated in the court-yard, some of them going into the public privy, where, during court, persons are constantly resorting. The bailiff testifies that once when they separated and went in there he examined the privy to see if there was any one there, but that they separated twice more when he did not examine it. See on this point the following cases: *Hare's Case,* 4 How. 189; *McCann's Case,* 9 S. & M. 465; *Pope & Jacob's Case,* 7 G. 121; *Caleb's Case,* 10 G. 722; *Bole's Case,* 13 S. & M. 398; *Organ's Case,* 4 C. 78; *Wood's Case,* 43 Miss. 364.

That the testimony of the jurors should not have been admitted see the following cases: *Organ's Case,* 4 Cush. 78; *Friar's Case,* 3 How. 422; *Rigg's Case,* 4 Cush. 51; *Pope & Jacob's Case,* 7 G. 111.

*W. C. Wells* and *C. M. Williamson,* counsel for the appellant, argued the case orally.

*T. M. Miller,* Attorney General, for the State.

1. It is not alleged that the absent witness had agreed to come to this State or what reasons there were for expecting him. No communication of any kind from Terry or the members of his family was produced. Under these circumstances—there being no reasonable assurance that Terry would be produced at the next term—it would seem unnecessary to consider whether a court ought to grant a continuance on account of the absence of a witness residing beyond the jurisdiction. It seems impossible to predicate " abuse of discretion " for refusing a continuance upon the showing made.

But the rule is that a continuance will not be granted where the absent testimony is out of the process of the court.

The presumption is that where the witness did not attend at the trial where the defendant's life was in jeopardy he would not attend at another court. See 3 Wharton on Cr. Law, § 3022 and cases cited.

2. The recent decision of this court in *Fred. Crum* v. *The State,* 64 Miss. 1, is a complete answer to the objections raised to the third charge.

3. The State's sixth instruction announces a fundamental prin-

ciple, that is : that in order to justify a killing *on the ground of self-defense* the party slain must at the very time be engaged in some act really or apparently dangerous to the life or limb of the slayer. The danger must be then imminent and impending. Cotton's case does not conflict with this doctrine.

But as applied to the issues on trial the charge could have done no harm, because the question was whether or not the deceased had made any sort of demonstration against the defendant. If he made any, if the defendant was ever in danger, it was at the very moment of the killing.

4. It was insisted that a new trial should have been granted because the jury were permitted to separate; but an examination of the testimony will show that there was no real separation; that there was no opportunity for intercourse with outside parties; that no one spoke to any of the jury in relation to the case.

It is now settled doctrine that the admission of incompetent evidence to prove a fact cannot be made the ground for a new trial where the fact is abundantly established by other testimony.

But it seems that the doctrine announced in *Organ* v. *The State*, viz. : that a juror is incompetent to impeach or sustain his verdict, is without a sound foundation in principle and ought to be overruled in so far as it asserts that a juror may not be permitted to testify to sustain the verdict. This is a practical question that ought to be passed on now that the opportunity is presented.

The *Attorney General* also made an oral argument.

COOPER, C. J., delivered the opinion of the court.

The application for a continuance was properly refused by the court. The offense for which the appellant has been convicted was committed more than six years before the trial. Immediately thereafter he fled from the State and remained away until a short time before the trial. In the mean time, the witness on account of whose absence the continuance was applied for had removed from the State and is still a non-resident. For anything that appears in the record his attendance might have been procured for years after the indictment was preferred against the appellant, who has

by his own conduct prevented an earlier investigation of the case. He does not occupy a position which entitles him to especial consideration in an application for a further postponement. But if he was otherwise free from fault the showing was insufficient. It is not shown that there was any reasonable expectation that the non-resident witness would ever be in attendance upon the court; it is not shown that he has ever returned to the State since his removal from it, or has ever expressed any intention so to do.

The instructions as a whole fairly presented the law to the jury.

It is true that by the first instruction for the State the right of the defendant to resist an attempt to commit a robbery on him was ignored; but it was not denied, and by instructions given for him the jury was informed, that if he had reasonable ground to believe the deceased was attempting to rob him he was justified in killing him.

The criticisms made upon the instructions for the State announcing the rule that if one inflict a wound upon another not of itself mortal, but which, being neglected or improperly treated, produced death, the party inflicting the wound would be responsible for the consequent death, were incorrect in not expressing the qualification that the wound must be dangerous, cannot be noticed under the facts of this case. It does not require an expert to testify that one shot through the body is dangerously wounded, and the suggestion that by possibility the ball might have been deflected in its course and have passed around and not through the deceased is not supported by any fact in evidence.

It is unnecessary to pass upon the competency of the jurors who were examined on the motion for a new trial as witnesses to support their verdict. That they have been held incompetent in several cases by this court is conceded by the attorney general, who presses upon us the propriety of overruling these decisions. In our opinion the verdict was not sufficiently assailed to necessitate any evidence in its support, and it is therefore immaterial whether it was supported by competent or incompetent evidence.

There are to be found many expressions in our reported cases to the effect that where circumstances were shown which exposed the

jury to the *possibility* of being tampered with, the verdict must be set aside unless it is affirmatively made to appear that no improper influences were brought to bear upon it. But this language must be interpreted by the circumstances of the case in which it was used. In *Hare's Case*, 4 How. 187, the jury, after retiring to consider of its verdict, was left by the bailiff in charge of an unsworn officer; so also in *McCann's Case*, 9 S. & M. 465. In *Nelms* v. *The State*, 13 S. & M. 500, the sworn officers in charge of the jury talked with them upon the question of the guilt of the defendant, one of them saying it was a worse case than Dyson's, and the other that "public opinion was against the accused." In *Bole's Case*, 13 S. & M., the jury was taken by the officer to a public hotel and there took meals with other guests, but an officer was seated between them and such other persons; a barber was admitted to the jury-room to shave one of the jurors, and the officer left the room, leaving him with the jury. Under these facts a new trial was awarded. In *Riggs' Case*, 26 Miss. 51, the jury was taken to a public hotel and took meals with a "crowd of guests." The landlord and his servants had free access to a room in the hotel in which the jury was kept. An adjoining room was prepared for the jury in which intoxicating liquor was put, and to which the "jurors went separately to drink." The jury had "cards, liquor, and a fiddle," all of which they used during the night. The next morning one of the jurors, without the consent of the officer in charge, separated from his fellows and paid a visit to his family. In *Organ's Case*, 26 Miss. 78, one of the jurors "left his fellows as they were retiring to consider of their verdict, and without the permission of the court went out of the court-house, passing, as he went, several persons who were in conversation, and remained out of the house for several minutes." This was held to vitiate the verdict. In *Woods* v. *The State*, 43 Miss. 364, the jury, by the consent of the accused, was permitted to disperse and its members mingled with the public. It was held that the consent of the prisoner did not preclude him from making the objection and that the separation vitiated the verdict. In *Durr* v. *The State*, 53 Miss. 425, one of the jurors was conducted by the bailiff

to the house of a friend, a quarter of a mile distant from the court-house, and there took dinner by himself in a room out of the presence of the bailiff. He was in a room in the rear of the building, remote from the observation of the bailiff. The room had four entrances, and there were one or more persons upon the premises with whom it was not shown that he had no communication. In all these cases the verdicts were set aside and new trials awarded. It will be noted that in all of them it was either shown that other persons had been brought in contact with the jury, or that there was a separation of the jury under such circumstances as to afford a reasonable presumption that communication was had with others ; there was in each case something more than a remote possibility that such communication was had, though in many of the cases observations are made by the court indicating that any separation of one juror from his fellows would be sufficient to annul the verdict, unless it was affirmatively shown that no communication was had with others.

We find no fault with the result reached in either of the cases cited, but we do not concur in the language used in some of them, from which the conclusion is sought to be drawn, and reasonably, that the mere withdrawal of a juror from the sight of his fellows and of the officer is under any and all circumstances a separation of the jury. Whether it is or is not must, as it seems to us, be dependent upon the circumstances of each particular case. Judges and jurors are but men, and we know of no reason why, in dealing with the action of jurors, an impracticable and unapproachable standard shall be adopted by courts to measure their conduct—a standard which, if applied to the judges of the courts, would produce frequent miscarriages of justice. If the mere possibility of unlawful communication or influence is sufficient to annul a verdict, when shall one be said to be pure and free from suspicion ? All our court-houses are in public places, and the public have right of access to them. At sessions of court many persons are there congregated, either from curiosity or by reason of business for themselves or others; jury-rooms open into the court-rooms, frequently filled with spectators, or by windows overlook

the yards; communication by writing, by signs, and by words is always possible, but it would be destructive to the ends of justice to hold that such possibility as this of unlawful influence should avoid verdicts upon which no just suspicion rests. To this all must agree.

But the question is, where lies the line on the one side of which a presumption exists in favor of the purity of the verdict, and on the other a contrary presumption arises? The answer must be that whatever is sufficient to create a well-founded suspicion in the impartial judicial mind that unlawful influences have been exerted will call upon the party in whose favor the decision rests to support the verdict, but until that much is shown in opposition to the verdict it should be upheld. If a juror willfully and without necessity withdraws from his fellows and goes to a place in which communication may be secretly had with another, his willful conduct, unexplained, may be sufficient to impair the faith which would otherwise be reposed in the integrity of his verdict. But can it be said that where, as in this case, several members of the jury separate themselves for a few moments from their fellows and the officer in charge by stepping into a privy to attend to the calls of nature, such conduct is calculated to impress any unbiased mind unfavorably to them? It is not attempted to be shown that any one other than the jurors and a deputy sheriff (who went into the privy while they were there, but who, it is affirmatively shown by his testimony, held no improper correspondence with them) was in the privy. It is only said that *possibly* some other person was there, and because of this possibility the verdict must be overturned unless it is clearly made to appear that no one else was or could have been there. In other words, the defendant shows the court the opportunity there was for communication if there was a third party there to communicate with the jurors, and the existence of this third person, it is insisted, is to be supplied by presumption.

We do not think the character of the place, a public privy at a court-house, is at all favorable to the presumption that any one would be there longer than his necessities compelled him to be. It

is not as though a juror had gone to a place to which the public resort and remain for social intercourse.

The deputy sheriff who went in while the jurors were there saw no one; the bailiff in charge of the jury, who stood a short distance off, saw no one; the witnesses who saw the jurors go into the privy and testified for the defendant saw no one; and yet it is argued that a presumption (which is a reasonable inference from known facts) must be indulged that some one bent on injury to the defendant was there at that particular time for the unlawful purpose of influencing the jury to convict him. We are free from doubt on this question. If, in the infinite possibilities of error, which may occur in all finite tribunals, no more probable injury shall be shown in the administration of our criminal laws, all innocent men may rest in the abiding confidence of immunity from punishment for crime they have not committed.

*The judgment is affirmed.*