JOHN J. HARPER *v.* STATE OF MISSISSIPPI.

1. CRIMINAL LAW. *Murder. Instructions. Aiding and abetting. Malice.*
In the trial of a murder case where it appeared that another than
defendant did the killing, defendant not actively participating
therein, an instruction for the state is erroneous which authorizes
the jury to convict.

   (*a*) If defendant were present at the time of the killing, aiding and
   abetting the person who fired the fatal shot, because it omits
   the idea that defendants' acts must have been malicious and
   with premeditation;

   (*b*) If defendant aided or abetted or encouraged the killing by word
   or act or deed or "in any other way," because of the use of the
   phrase "in any other way;"

   (*c*) If defendant aided, assisted, or encouraged the killing by any-
   thing said or done, or by his presence, although he did not fire a
   shot, because it allowed a conviction even though the person who
   fired the fatal shot were justified in so doing;

   (*d*) If defendant were present with a design to encourage, incite,
   or "approve" of such killing, because of the use of the word
   "approve."

2. SAME. *Conflicting instructions. When reversible error.*
If an instruction undertakes to make a concrete application of the
law to the facts of the case, directing a designated verdict if the
jury believe the facts to be as stated in the instruction, and the
facts stated will not legally sustain the verdict directed, the
error is a reversible one and cannot be cured by other instruc-
tions.

3. SAME. *When not reversible error.*
Where the conflict between the instructions, given for the re-
spective parties, is between an erroneous announcement of an
abstract proposition of law, on the one hand, and a correct state-
ment of such or a similar proposition, on the other, the error will
not be reversible if, taking the instructions as a whole, the court
can see that no harm has been done.

4. SAME. *Refusal of correct instruction. When not reversible error.*

Where a sufficient number of instructions were granted to defendant in a criminal case, an assignment of errors on appeal, predicated of the refusal of other instructions, will not be sustained if it appear that the jury were furnished a sufficient guide for the proper determination of the case.

5. SAME. *Evidence.*

In a prosecution for murder testimony should not be admitted:

(*a*) Which does not shed some light upon the acts of the defendant or in some way tend to support the hypothesis upon which the state seeks to justify his conviction; or

(*b*) Which does not constitute admissions showing a guilty knowledge, confessions of guilt, or declarations against interest; and

(*c*) In the absence of affirmative evidence showing participation by defendant in the homicide, testimony as to the defendants approval thereof subsequent to its commission, or of his desire to conceal the crime or shield the real criminal, is incompetent; and

(*d*) Where defendant is indicted as a principal, evidence that defendant, after deceased was shot, made hypodermic injections of morphine or other drugs to prevent deceased from making statements about the killing, is incompetent.

6. SAME. *Indictment. Accessory after the fact.*

A defendant indicted for murder as a principal cannot be convicted thereunder of being an accessory after the fact.

FROM the circuit court of, second district, Perry county.

HON. JOHN R. ENOCHS, Judge.

Harper, appellant, a practicing physician, was indicted, tried and convicted of murder, the killing of one William B. Lawrence, sentenced to the penitentiary for life, and appealed to the supreme court.

The facts are stated in the opinion of the court.

*A. J. McLaurin,* for appellant.

The first twelve assignments of error are predicated of the position that there was an eye witness to the killing, by whom the prosecution proved positively that Harper did not do any-

thing to aid in the killing, and did not seem to say anything to abet it, and that the evidence offered of what transpired after the shooting could not throw any light on what occurred at or before the shooting. Of course, there are cases where subsequent events throw light on antecedent occurrences, but this is not one of them. Of course, in cases depending upon circumstantial evidence, every circumstance that sheds light upon the issue is admissible; but this rule ought not to admit, on the contrary it excludes, evidence of circumstances that do not shed light on the issue. *Shaw* v. *State,* 79 Miss., 23; *State* v. *Hickman,* 6 Am. St. Rep., 58.

The defendant's cause ought not to be cumbered with such irrelevant testimony, often introduced because it is supposed to show that he is a bad man, not to show that he is guilty of the particular offense for which he is being tried—but to get a conviction through the prejudice thus engendered or fed.

The prosecution proved that as soon as decedent was shot, Dr. Harper informed Johnson, and had him send for Dr. Denson, and the justice of the peace and constable, and administered medicine to him; and when the officers and Dr. Denson and Mr. Gunter and others came he showed them the wounds, and had decedent, then unconscious, carried to a small house and put on a cot with a quilt or two under him and a blanket or two over him; and when the small room was crowded with men, vitiating the atmosphere, he closed the door and locked it when he went off to be gone a few minutes, to all of which the defendant objected, because it could not form the basis for any just inference that Dr. Harper participated in the killing. These facts might form the basis of a suspicion, but not of an inference. For they could as well be the acts of an innocent man as of a guilty one. This being so, they ought not to operate against the defendant. *Pitts* v. *State,* 43 Miss., 484. *Josephine* v. *State,* 39 Miss., 613; *State* v. *Clouser,* 69 Iowa, 318.

If they amount only to suspicion or probability, however

great, they are worth nothing. *Algheri* v. *State,* 25 Miss., 584; 1 Stark. on Ev., 572; *State* v. *Clouser,* 69 Iowa, 318.

Phillips, an eminent author, tells us: "It is the exclusion of every other reasonable hypothesis than that of the guilt of the accused, that invests mere circumstances with force of proof." *Pitts* v. *State,* 43 Miss., 484.

The prosecution introduced evidence, over appellant's objections, that Dr. Harper told some persons that the decedent had a lingering disease, and contend that he was doing so to conceal the fact that decedent was shot, and infer therefrom that appellant participated in the killing. This was error. Aiding a murderer in concealing even the body of his victim could not make the aider guilty of participation in the murder—it would make him guilty as an accessory after the fact. *Harrel* v. *State,* 80 Am. Dec., 95, note p. 97; *White* v. *People,* 81 Ill., 338; *Melton* v. *State,* 43 Ark., 371. A man charged with murder cannot be convicted as an accessory after the fact. *Phillips* v. *State,* 8 Am. St. Rep., 471.

In addition to the fact that no reasonably certain inference can be drawn from the circumstances, even though they were proved, and, therefore, are worthless, and, if worthless, inadmissible, the testimony by which they are sought to be proved is exceedingly unreliable. Judge REDFIELD said of such testimony: "In a somewhat extended experience of jury trials, we have been compelled to the conclusion that the most unreliable of all evidence is that of the oral admissions of the party, and especially where they purport to have been made during the pendency of the action, or after parties were in a state of controversy. It is not uncommon for different witnesses of the same conversation to give precisely opposite accounts of it; and in some instances it will appear that the witness deposes to the statements of one party as coming from the other, and it is not very uncommon to find witnesses of the best intentions repeating the declarations of the party in his own favor as the fullest admissions of the utter falsity of his

claim. When we reflect upon the inaccuracy of many witnesses, in their original comprehensions of a conversation, their extreme liability to mingle subsequent facts and occurrences with the original transactions, and the impossibility of recollecting the precise terms used by the party, or of translating them by exact equivalents, we must conclude there is no substantial reliance upon this class of testimony." 1 Greenleaf on Evidence, addendum by Redfield to, sec. 200.

The rejection of Boykin's testimony was clearly wrong.

The prosecution introduced testimony which, it was claimed, tended to show that Dr. Harper was trying to conceal the fact that decedent had been shot. The defendant offered to prove by Boykin that during the same time he had asked Dr. Harper what was the matter with deceased, and the defendant told him he had been shot. The prosecution objected to this, because, they said, the defendant could not make testimony for himself. The only way defendant could refute the claim of the prosecution was by showing that he was not concealing the fact by proving that he was telling it.

It was not making testimony for himself. He was not trying to prove that the man was shot, but that he was telling, where occasion required, that decedent was shot, and, therefore, not concealing it.

Such testimony is admissible "wherever the fact that such communication was made, and not its truth or falsity, is the point in controversy." 1 Greenleaf on Ev., sec. 101 (15th ed.) ; *McClary* v. *Anthony,* 54 Miss., 711; *Jones* v. *State,* 25 Am. St. Rep., 715; 1 Greenleaf on Ev., sec. 101 (15th ed.) ; *McCleary* v. *Anthony,* 54 Miss., 711; *Jones* v. *State,* 25 Am. St. Rep., 715.

There is another error equally as clear. It was permitting Mrs. Wade to tell what Mrs. Howse said to Dr. Harper. The expression of opinion of Mrs. Howse that the deceased had been murdered went to the jury. Mrs. Howse was not an eye witness of the shooting, but she was not far away, and who

can tell what influence her opinion exerted over the minds of the jury?

Statements made by others in the presence of a defendant can only be introduced against him where he is called upon to speak in denial, but does not speak, and, therefore, it may be inferable that he intends to admit them. 1 Greenleaf on Ev. (15th ed.), sec. 197; *Noonan* v. *State,* 1 Smed. & M. (9 Miss.), 571.

"But, in regard to admissions inferred from acquiescence in the verbal statements of others, the maxim, *qui tacet consentire videtur,* is to be applied with careful discrimination." 1 Greenleaf on Ev. (15th ed.), 199, 200; *Campbell* v. *Henry,* 45 Miss., 331; *James* v. *State,* 45 Miss., 576; *Kendrick* v. *State,* 55 Miss., 450. The language may have been misunderstood. *Gallman* v. *Perrie,* 47 Miss., 143.

The thirteenth and fourteenth assignment of error grow out of the admission of testimony as to the condition of Lawrence's eyes Saturday evening, and then that bloody water seemed to be running out of one of them Sunday morning, without showing that no one else could have had access to him but this defendant in the interim. *State* v. *Wilks,* 50 Mo. App., 159. It could afford nothing better than a basis for a suspicion, and as suspicions ought, by all the authorities, to be excluded that which affords nothing but their bases ought to be excluded. The court is bound to decide as to what facts may be the basis of a necessary inference, and should not admit evidence of facts that could not be such basis, although they may be the basis of a suspicion, however strong. *Shaw* v. *State,* 79 Miss., 23.

Without showing that no one else could have had access to him no necessary inference could be drawn that Dr. Harper injured decedent's eye. *Webb* v. *State,* 73 Miss., 461; Phillips, p. 23. We have the doubtful supposition—not necessary inference—that Dr. Harper injured the man's eye; and from this doubtful supposition we suppose that Dr. Harper participated

in the killing of Lawrence, proving one doubtful thing by another, which good sense, as well as Phillips, says cannot be done.

Phillips, in Introduction to Fam. Cases, 23, says: "The law never admits of an inference from an inference. Two imperfect things cannot make one perfect." *State* v. *Wilks,* 50 Mo. App., 159.

It was error to admit the testimony of witness Carr as to what Dr. Harper said to him Monday night, when Harper was appealing to Carr not to join in getting a petition to have him removed from his position as doctor for the camp, a petition that never was written, but was discussed. Using the language of Mr. Chief Justice Whitfield in the case of Owens, 80 Miss., 510, "It is impossible to take his language and work out of it, by any just reasoning," any confession that he had "injured, or aided in the injuring, of anybody." See also, *State* v. *Clouser,* 69 Iowa, 318-19.

This court has expressly condemned such an instruction as the first one given for the state, in that it leaves out all idea of intention, malice, premeditation or deliberation in the killing. *Kearney* v. *State,* 68 Miss., 239; *Hunter* v. *State,* 74 Miss., 519; *Jackson* v. *State,* 79 Miss., 45; *Woods* v. *State,* 81 Miss., 165; *Thames* v. *State,* South. Rep., 171 (Nov. 21, 1903); s. c., 82 Miss., 667; *Lofton* v. *State,* 79 Miss., 723.

It is impossibe to cure an error like this. *State* v. *Hickman,* 6 Am. St. Rep., 59. When a court gives two abstract propositions of law they may or may not modify each other. But when a court gives a hypothetical state of facts and tells the jury that upon the finding of such facts the verdict must be guilty; and afterwards in another instruction tells the jury that from which a lawyer would deduce that more is required, it is not a modification of the first instruction, it is a contradiction of it. Contradictory instructions should not be given. *Cunningham* v. *State,* 56 Miss., 277. *Wheaton* v. *Sexton,* 17 U. S., 508; *Johnson* v. *State,* 66 Miss., 189; *Cooper* v. *State,* 80 Miss., 175.

· Where an erroneous instruction may have produced the result, the fact that other instructions correctly stated the law will not prevent a reversal. *R. R. Co.* v. *Minor,* 69 Miss., 722.

The second instruction given at the request of the prosecution, is without the semblance of evidence to support it. There is not a word of evidence that Dr. Harper encouraged the murder of Lawrence—if he was murdered—by word or *act* or *deed.* "An instruction without evidence to support it is harmful." *Spradley* v. *State,* 80 Miss., 87; *Oliver* v. *State,* 39 Miss., 526; *Cooper* v. *State,* 80 Miss., 175; *Middleton* v. *State,* 80 Miss., 393.

The words in this instruction *"or in any other way,"* made it unquestionably erroneous. *Middleton* v. *State,* 80 Miss., 393; *Hicks* v. *United States,* 150 U. S., 450; *Woolweaver* v. *State,* 40 Am. St. Rep., 667.

The sixth instruction for the state is actually vicious. It almost tells the jury that McCormick killed Lawrence; it practically tells the jury that McCormick killed him with malice aforethought, and that he deliberated, premeditated. Then it tells the jury that if Dr. Harper was present with a design to encourage, incite, or *approve* of the killing, he is guilty of murder. Dr. Harper, according to this instruction, may have been present with a design to encourage or incite, but never have in fact in the least encouraged or incited McCormick, yet he would be guilty of murder. That cannot be law. The aiding, abetting, or assisting, or inciting, or encouraging must be affirmative. *State* v. *Cox,* 65 Mo., 29; *State* v. *Douglass,* 44 Kan., 626. Before a man can be guilty of murder he must do something that causes, or helps to cause, the murder; his mere design is not a capital crime. *White* v. *People,* 32 Am. St. Rep., 196; *Burrel* v. *State,* 18 Texas, 713; *Watson* v. *State,* 28 Tex. App., 34. This instruction does not tell the jury that if Dr. Harper encouraged, incited, or approved a murder, he is guilty of murder; but it tells the jury that if he designed to encourage incite, or approve—not a murder—a killing, he is guilty of

murder. No other instruction can modify this; they can only contradict it. *State* v. *Hickman*, 6 Am. St. Rep., 59. The word "approve" has found its way into one of the opinions, but I think criminal jurisprudence is beclouded by the expression. For before the approver can be criminal because of his approval it must be manifested by some word or act, in such way that it operated on the mind of the principal actor, and influenced him to commit the crime. Every such case is covered by the words aid, abet, encourage, incite, assist. *Clem* v. *State*, 33 Ind., 430-431; *State* v. *Douglass*, 44 Kansas, 626. Indeed, it is impossible to conceive of a separate element of approval that could make a man guilty. It is therefore confusing, and does no good. *State* v. *Douglass*, 44 Kansas, 618; *People* v. *Johnson*, 81 Mo., 483; *Omer* v. *Com.*, 95 Ky., 360; *State* v. *Ham*, 40 N. J. L., 228. *True* v. *Com.*, 90 Ky., 651.

*Shannon & Street, N. C. Hill*, and *B. W. Sharbrough*, on same side.

*William Williams*, attorney general, for appellee.

The facts, as disclosed by the record, show the appellant to be guilty of one of the most horrible murders ever committed. The record is plain, and we deem it unnecssary to argue the facts to the court.

The first to the twenty-fifth assignments of error, inclusive, are based upon the inadmissibility of testimony. Counsel contends that the testimony mentioned therein should not have gone to the jury. We can find no error in admitting the testimony which counsel contends was inadmissible. It is well settled that the acts, words, and conduct of the accused can be given in evidence as a circumstance to show his guilt. Wharton's Criminal Evidence (9th ed.), paragraphs 27 and 28.

The contention of counsel as to the circumstantial evidence introduced in this case is not sound. The instructions on cir-

cumstantial evidence given for the accused are as favorable
to him as any court of justice could rightfully give.

While the first instruction given for the state is condemned
in Kearney's case, 68 Miss., 233, and in Hunter's case, 74
Miss., 515, we submit that the other instructions given for the
state, and those given for the defendant, announce the law
correctly. Numerous instructions were given for the defend-
ant, and they announce the law most liberally for him.
We submit that if the first instruction is erroneous, the
error was cured by the other instructions for the state and
the numerous ones given for the accused. If this is true, the
giving of this instruction would not warrant a reversal of the
case. Hawthorne's case, 58 Miss., 778.

The verdict is manifestly right, and should not be disturbed
on account of an erroneous instruction. Vance's case, 62 Miss.,
137; *Storm* v. *Green;* 51 Miss., 103.

The second instruction for the state is not erroneous. The
appellant could not have aided in the murder after the mur-
der had been committed. The fact that the instruction does
not use the words "at the time or before" the killing, is not
material, for all the evidence shows that if the appellant aided
at all it was before or at the time of the killing. While the
testimony is circumstantial, Harper's every act before and after
the killing shows that he was a party to it. The jury had to
believe this before they could have convicted him under the
instructions given for the state.

The fifth instruction uses the words "by his presence," when?
Of course at the time of the killing. Under the sixth instruc-
tion the jury had to believe that Lawrence was murdered, and
that appellant was present at the time of the murder with a
design to encourage, incite or approve of such killing before
they could have returned a verdict of guilty.

The defendant's theory of the case was most liberally put to
the jury in the instructions given for him. Therefore it was
not error to refuse other instructions, even though they were

right, but those refused in this case were erroneous. In *Mabry v. State*, 71 Miss., 716, the court said: "The first thirty-two instructions asked by the accused were given, and the next seven were refused. We draw the line far this side of thirty-two instructions on one side. Life is too short and time too precious to be expended in dealing with fifty-three instructions, or any such number in one case, and, as all terrestrial things have limits, we have determined to announce that, where the court in any case has given the first six, eight or ten instructions, asked by a party, and refused any more, we will not consider errors assigned as to such refused instructions, unless it shall appear that the jury was not furnished a sufficient guide for their proper determination of the case."

Argued orally by *A. J. McLaurin*, for appellant.

TRULY, J., delivered the opinion of the court.

Appellant, J. J. Harper, was indicted jointly with R. T. McCormick for the murder of one William B. Lawrence. Severance was had. Appellant placed on trial, convicted of murder, appeals to this court, and assigns thirty-nine causes of error. The theory of the state was that appellant, with McCormick, jointly participated in the murder of deceased. The testimony of the state witnesses shows that upon the complaint of certain women appellant stated that he would get McCormick, and arrest or have arrested the deceased for some real or supposed violation of the law. Three shots were fired. The last two are definitely shown to have been fired by McCormick, and, while there was no eyewitness to the first shot, immediately thereater McCormick was seen with a pistol in his hand, pointed in the direction of the deceased, and as this was the only weapon in reference to which any testimony was given, it appears that McCormick was the only person who actually fired a pistol; and it is upon this theory that the prosecution proceeded. The relative positions of the parties, and

their actions at the very moment of the first shot, do not appear from the record. When the first eyewitness had her attention attracted to the scene of the homicide, the first shot had already been fired, and McCormick was in the act of firing again, while the deceased was either falling to the ground or attempting to raise himself from the ground, and appellant was standing a short distance from McCormick, and some steps from deceased, with no weapon in his hands, and, so far as the witness could see or hear, in no way participating in the tragedy. The record discloses absolutely no suggestion or intimation of any motive either on the part of McCormick or appellant for the killing of Lawrence. McCormick was assistant foreman at the lumber camp, while appellant was the camp physician, deceased being a transient laborer.

Under this state of facts the first instruction for the state told the jury that if they believed that McCormick "shot and killed" deceased, and that appellant was present at the time of the killing, aiding and abetting McCormick in killing deceased, then appellant was guilty as charged. The error in this instruction is glaring and manifest, and is almost identical in terms with those which have been repeatedly condemned by this court. It omits all mention of the intention, malice, or premeditation of McCormick in killing deceased. We cite only a few of the more recent cases in which our own state reports abound condemning the instruction in question: *Kearney* v. *State,* 68 Miss., 239, 8 South., 292; *Hunter* v. *State,* 74 Miss., 515, 21 South., 305; *Jackson* v. *State,* 79 Miss., 45, 30 South., 39; *Lofton* v. *State,* 79 Miss., 723, 31 South., 420; *Woods* v. *State,* 81 Miss., 165, 32 South., 988; *Thames* v. *State,* 82 Miss., 667, 35 South., 171. Under the terms of this instruction, whether McCormick was justifiable in killing Lawrence on the plea of self-defense, or whether he was guilty simply of manslaughter in killing because it was done in heat of passion, in either event the jury was instructed that if McCormick "shot and killed," and appellant aided or abetted therein, that then, without refer-

ence to the guilt of McCormick, the actual slayer, the appellant, the alleged participant, was guilty of murder. Under the undisputed facts of this record, in which it is not denied that deceased came to his death at the hands of McCormick, the effect of this instruction was to say that, as there was no dispute on this point, the jury should convict appellant of murder, if they believed merely that he was present at the scene of the killing and participated therein. McCormick might have been justifiable, yet appellant was to be convicted of murder. McCormick might have been guilty of manslaughter, yet appellant was to be convicted of murder. The actual slayer might not have violated the law, yet the jury was instructed to convict the bystander if he aided, abetted, or participated in the killing. A guilty accessory presupposes a guilty principal.

Having thus, by the first instruction for the state, limited the consideration by the jury to the single fact whether the appellant was present at the scene of the killing, aiding and abetting therein, the court, by the second instruction for the state, told the jury that if appellant "aided or abetted or encouraged such murder by word or act or deed, or in any other way," that they (the jury) were to find appellant guilty as charged. This instruction is, in our judgment, based upon a total misconception of the true legal principle. It is well settled that one who is present with an avowed intention to aid is a participant in a homicide, or one who, though not present, counsels a homicide, is an accessory before the fact, and therefore, under our law (Code 1892, § 950), deemed and considered a principal. *Hodsett* v. *State,* 40 Miss., 522; *Unger* v. *State,* 42 Miss., 642. But the instruction now under consideration is an unwarranted extension of this rule. It does not state that appellant was present at the scene of the homicide; therefore he could not be, under this instruction, convicted as a participant upon that theory alone. It states that, if he aided or abetted or encouraged such murder by "word or act or deed, or in any other way," then he was guilty of murder. In this connection, upon

what legal principle was the expression "in any other way" warranted? If one is not present at the scene of the homicide, and has not aided, abetted, or encouraged the slayer by act or word or deed, in what other way can he be held to be an accessory? For what other act can it be said that he in any way participated in the homicide? It is undoubtedly true that, to convict a person as an accessory before the fact, one of two things must exist: he must either be present with the intention to aid or assist in the killing, or, though not present, must counsel, procure, or command the killing. The second instruction given for the state does not meet this requirement.

A strikingly clear and accurate statement of the rule is found in that very valuable work, McClain on Criminal Law, ch. 15, sec. 194, as follows: "Some degree of participation in the criminal act must be shown in order to establish any criminal liability. Proof that one has stood by at the commission of a crime without taking any steps to prevent it does not alone indicate such participation or combination in the wrong done as to show criminal liability, although he approve of the act. Even the fact of previous knowledge that a felony was intended will not render one who has concealed such knowledge and is present at the commission of the offense a party thereto." See, also, 9 Am. & Eng. Enc. Law, 575; 2 Thompson, Trials, sec. 2216.

The fifth instruction for the state is also manifestly erroneous. By it the jury was told that, in order to warrant them in finding appellant guilty of the murder of Lawrence, "it is not necessary to prove a conspiracy between appellant and McCormick to kill Lawrence, or to do any violence to him"; that it is not necessary to prove that Harper fired a shot at Lawrence, or told McCormick to shoot Lawrence; but that the jury ought to convict Harper of murder if they believed that Lawrence was killed, and that Harper "aided, assisted, or encouraged such killing by anything said or done by his pres-

*Opinion of the court.*

ence for that purpose, or in any other way." This instruction not only falls within the condemnation of the principle announced in the consideration of the preceding instruction, but it goes still further. The legal effect of this instruction was to say to the jury that, though Harper and McCormick approached Lawrence upon a lawful mission, with no intention of doing any violence to his person, and that thereafter, if for any reason, upon any provocation, McCormick killed Lawrence, and that Harper encouraged such killing by his presence or in any other way, then, without any reference to the guilt of McCormick, the jury should convict the appellant of murder. Another error in the instruction is that it is not based upon any evidence disclosed by this record. There is absolutely no testimony on the part of the state proving that Harper, at the scene of the homicide, either said or did anything showing any participation in the killing of Lawrence. It is clearly not the law that a bystander, or one who goes with another upon a lawful mission, or at least without any criminal intent on his part, can be held guilty of murder without affirmative proof of some word of encouragement spoken or overt act committed on his part, evincing a design to participate in the killing. *State* v. *Hickman,* 95 Mo., 322, 8 S. W., 252, 6 Am. St. Rep., 54; *Owens* v. *State,* 80 Miss., 510, 32 South., 152.

The sixth instruction for the state informed the jury that it was their duty to find appellant guilty as charged if they believed appellant was present "with the design to give assistance, if necessary, to McCormick, when he killed Lawrence, or was present with a design to encourage, incite, or approve of such killing of Lawrence." The errors in this instruction are many and apparent. It charged the jury to convict appellant of murder if they believed he was present with the design to approve of the killing of Lawrence by McCormick, whether such killing on the part of McCormick was or was not itself murder. We are not unmindful of the fact that the courts have occasionally employed the term "approve" in similar cases, but the

sounder reasoning unqualifiedly condemns its use in this con-
nection. The very expression "approve" conveys the obvious
meaning of a deed already accomplished, and one committed
by another party. One who tacitly approves of or silently con-
sents to the killing of any person cannot, under any rule of
law, be held to have aided or abetted in such killing. The
error in the instruction becomes only the more vicious when
it is noted that the killing, for the approval of which the by-
stander is to be condemned, is not, by the terms of the in-
struction, necessarily a crime at all. Would a conservative,
peaceful citizen, who, in the discharge of some duty, or upon
some lawful mission, goes with another in search of a third
person, with no intention on his part to commit any crime,
or to do any violence to such third person, and a sudden alter-
cation arises, in which, justifiably or not, his companion kills
the party whom they are seeking, if he approve of such kill-
ing, be guilty of murder? The question answers itself in the
negative. "One may rejoice over a murder after its commis-
sion without for that being criminally liable." *Cooper* v. *John-
son*, 81 Mo., 483; *Cabbell* v. *State*, 46 Ala., 195. In *True* v.
*Commonwealth*, 90 Ky., 653 14 S. W., 684—a murder case,
in its salient facts strikingly similar to the case at bar—the
court says: "The words 'encourage, aid, or abet' mean or
imply the will of a person has contributed to the act actually
committed by another, and fully and accurately describe an
accessory before the fact, if he is too far away to aid in the
felonious act, or a principal in it if near enough to aid. And
so the words 'counsel, advise, or assist' may be, and frequently
are, used to describe the offense of a person who, not actually
doing the felonious act, by his will contributes to or procures it
to be done, and thereby becomes a principal or accessory accord-
ing to the situation he may be in at the time. But the words
'approve of' and 'consent to' do not, singly or combined, express
the idea of willful contribution to or procurement of a feloni-
ous act, which is necessary to constitute guilt; for a person may

be present, and heartily approve of an act after it is done, without being at all willing to or capable of aiding, advising, or procuring it done, especially if it be felonious; or he may consent in the sense of offering no resistance to commission of it without the slightest contribution to it by his own will. It seems to us the instruction must have been necessarily misleading, and therefore prejudicial to the substantial rights of the defendant."

The attorney general, in his forceful presentation of the cause of the state, urges that, even if it be conceded that the instructions for the state above referred to are erroneous, still the judgment should not on that account alone be reversed, for the reason that the numerous instructions granted for the appellant correctly announce the propositions of law applicable to the issues involved. Considerable confusion has crept into the decisions of the various courts on the question as to the extent to which errors in instructions given for one side can be corrected by the instructions, properly drawn, granted to the other. The true rule, as we apprehend, is this: Where an abstract proposition of law is incorrectly announced by an instruction, and the same or similar propositions of law are thereafter correctly set forth in other instructions in the cause, then if, taking the instructions on both sides as a whole, the court can safely affirm that no harm has been done to either side, and that the right result has been reached, the verdict of the jury will not, in such cases, be disturbed. *Skates* v. *State,* 64 Miss., 644, 1 South., 843, 60 Am. Rep., 70. But where, as in the instant case, the court undertakes to collate certain facts and, making a concrete application of the law to such facts, instructs the jury to bring in a stated verdict if they believe in their existence, and the facts therein stated will not legally sustain the verdict directed, such error cannot be cured by other instructions; the reason for the difference being that in the first instance it is simply an erroneous statement of a legal principle, which may or may not mislead the jury, according to the vary-

ing circumstances of causes, but in the latter instance, where a verdict is directed to be based upon the facts stated in the instruction, other instructions embodying other and different statements of facts and authorizing verdicts to be predicated thereon, do not modify the erroneous instruction, but simply conflict therewith. If, by an erroneous instruction, a jury be charged to convict if they believe certain facts to exist, and by another instruction the jury be told that they should acquit unless they believe that certain other facts also exist, these instructions do not modify, but contradict, each other. The one is not explanatory of the other, but in conflict therewith. In such a state of case the jury is left without any sure or certain guide to conduct them to the proper conclusion. *Hawthorne* v. *State,* 58 Miss., 778; *Collins* v. *State,* 71 Miss., 691, 15 South., 42; *Josephine* v. *State,* 39 Miss., 647; *Owens* v. *State,* 80 Miss., 499, 32 South., 152.

The court gave for the defendant thirty-four skillfully drawn instructions in which the theory of the defense was fully set out. Under this state of facts we do not deem it necessary to consider critically the action of the court in modifying three other instructions or in refusing eight, which were also asked. The rule is stated in *Mabry* v. *State,* 71 Miss., 716, 14 South., 267, that, where a sufficient number of instructions have been granted for the defendant, errors assigned as to the refusal of certain other instructions would not be considered "unless it shall appear that the jury was not furnished a sufficient guide for their proper determination of the case." In the case at bar the side of the defendant was most fully, clearly, and forcibly presented in all its varying phases by the instructions which were granted in his behalf. It is true that instruction No. 45 should have been granted as asked, inasmuch as the court had granted instruction No. 6 for the state, but, as hereinbefore shown, the action of the court in granting the sixth instruction for the state was error, and, as that instruction will not be given in its present shape upon another trial hereof,

neither should an instruction containing the converse of the proposition be granted for the defendant.

The assignments of error based on several causes stated in the motion for a new trial and the motion in arrest of judgment cannot, in the nature of things, occur upon another trial of this cause. It is not necessary, therefore, for us to consider or decide them. Many other assignments are based upon the rulings of the trial court in admitting testimony of the acts, conduct, and declarations of the appellant after the homicide was committed. Without deciding each assignment of error as especially stated, we will content ourselves with announcing the rules which should govern trial courts in the admission of such testimony. In considering the instant case, it should be noted that the entire prosecution is based upon the hypothesis that the appellant was present at the scene of homicide, either as a participant therein or as an accessory before the fact, and therefore equally guilty with his principal. Looking at the case from this point of view, only such testimony of the conduct, acts, or the declarations of the appellant should be admitted to the jury as possesses probative force, or which tends to throw light upon the homicide, or show some motive on the part of appellant for his alleged participation in the homicide. It should be borne in mind that only relevant testimony should ever be by the trial court submitted to the consideration of the jury. It is for the judge to say what testimony is relevant and competent, and for the jury to decide what weight shall be given to the testimony. As the jury is without authority to arbitrarily disregard any testimony admitted by the court, the mere fact of the admission is liable to influence a jury to give some weight to all testimony, for they may well reason that, if the testimony had not been competent it would not have been by the court submitted to them. Thus, where a great mass of incompetent and irrelevant testimony is admitted over the objection of the defendant, his case may be seri-

ously prejudiced in the minds of the jury. In *Shaw* v. *State,* 79 Miss., 23, 30 South., 42, it is said: "None but material facts should be permitted to go to the jury, and they are not to be required to discuss the materiality of the testimony." And the same rule is to be deduced from the opinion of the court in the case of *Story* v. *State,* 68 Miss., 627, 10 South., 47. Wharton's Criminal Evidence states the rule thus: "If a person is on trial for the homicide, then against him are admissible all facts that sustain any hypothesis which implies his guilt. When it is his turn to develop his defense, then any facts are admissible that would sustain the hypothesis of his innocence. All facts that go either to sustain or impeach an hypothesis logically pertinent are admissible, but no fact is relevant which does not make more or less probable such hypothesis." Chapter 2, sections 23, 24. The true rule, then, in the case at bar, is this: The hypothesis of the state being that the appellant is guilty by reason of his participation in the shooting by McCormick of Lawrence, no testimony should be admitted which does not shed some light upon the acts of appellant, or in some way tend to support the hypothesis upon which the state seeks to justify his conviction. Applying this test, and without passing in detail upon the numerous objections disclosed by the record, it appears manifest that the testimony in reference to the fact that the wounded man was conveyed to a particular house was inadmissible because irrelevant. The manner in which the remains were dressed, and the further fact that some hours after death one eye was sunken, with blood oozing therefrom, were not admissible, because appellant's connection therewith was not clearly shown, even if such testimony be otherwise competent. The many statements as to the illness or injuries of Lawrence, attributed to appellant, made after the wounds had been examined in the presence of appellant, the justice of the peace, and other witnesses, and by which he evidently sought to discourage or evade all inquiries inspired by morbid curiosity

as to the condition of the wounded man, are clearly of no affirmative probative force, and "sustain no hypothesis which implies his guilt." They are not admissions showing a guilty knowledge, they are not confessions of guilt, they are not declarations against interest, and hence are incompetent. *Gillum* v. *State,* 62 Miss., 547; *Chism* v. *State,* 70 Miss., 742, 12 South., 852; *Owens* v. *State, supra; Brown* v. *State,* 78 Miss., 638, 29 South., 519, 84 Am. St. Rep., 641.

In the absence of affirmative proof showing participation in a homicide, testimony as to approval thereof, subsequent to its commission, of a desire to conceal the crime or to shield the real criminal, is incompetent on a trial for murder. Appellant was indicted and is sought to be convicted as a participant in, or an accessory before the fact to, the killing. He cannot, under this indictment, be convicted as an accessory after the fact. *People* v. *Campbell,* 40 Cal., 129; *People* v. *Keefer* (Cal.), 3 Pac., 818. Therefore, stated most strongly against him, and assuming that the hypodermic injections were made with a view of preventing the wounded man from making any statement of the circumstances attendant upon the homicide, this did not render his conduct in this connection relevant to the issue involved in this trial. If true, these facts tend to show that appellant was guilty only as an accessory after the fact. *White* v. *People,* 81 Ill., 333. The legal presumption of innocence protects the appellant from any inferences being drawn from an act, innocent in itself, in an effort to establish his guilt; and the record nowhere contains any evidence to justify the jury in reaching the conclusion that Harper did more in his ministrations to the wounded man than medical science dictated. The trial court, in ruling upon questions of this kind, should see that the appellant, if convicted, should be so only upon testimony competent and relevant. His cause should not be weighted down with a great mass of "trifles light as air," innocent in themselves, but which being, by the rul-

ing of the court, admitted on the part of the state and over the objection of the defendant, are liable to be considered by the untrained mind of the average juror, be he ever so fair and conscientious, as gravely incriminating circumstances.

*Reversed and remanded.*