291 So.2d 707 (1974)
Jesse LAMPLEY
v.
STATE of Mississippi.
No. 47446.
Supreme Court of Mississippi.
March 4, 1974.
Rehearing Denied April 8, 1974.
*708 Sekul, Hornsby, Wallace & Blessey, Biloxi, for appellant.
A.F. Summer, Atty. Gen., by T.E. Childs, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
GILLESPIE, Chief Justice:
Jesse Lampley appeals from a conviction in the Circuit Court of Harrison County of the crime of rape. Sentence: life imprisonment.
The defendant and two friends arrived at the residence of Tiwana Harris where a party was in progress. Loretta Stewart, the prosecutrix, and her friend, Kenny Little, were at the party, and defendant offered to drive them home. Instead of driving them to their home, he drove to a secluded place where he forced Little from the car and then forceably raped Loretta Stewart. While defendant denied that he raped Loretta Stewart, the evidence amply supported the verdict of the jury.
Of the several questions raised, the only proposition that requires discussion is the contention that a new trial should have been ordered because two jurors were separated from the other jurors for a period of time and were unattended by a bailiff during the separation.
The jury consisted of men and women and were under the charge of two bailiffs, a man and a woman. The jury was quartered at the Holiday Inn, about a five-minute drive from the courthouse. During the progress of the trial, two of the jurors were inadvertently separated from the others for a period of approximately fifteen or twenty minutes. On the second day of the trial, Mrs. Alena Ladner, in transporting the jury to the courthouse before the opening in court, left with part of the jury before the other bailiff, John Bosarge. When Bosarge reached the front of the hotel, he missed two jurors. He returned and knocked on the doors of the rooms where the jurors were staying, but no one answered. Bosarge then brought his group to court, but the missing jurors were not there. Mrs. Ladner telephoned the rooms of the missing jurors and told them to stay there. She then drove to the hotel and brought the two jurors to the courtroom. The record indicates that the two jurors were separated for a period of about fifteen or twenty minutes. There is no suggestion that the separated jurors were contacted by anyone.
The rule respecting the separation of the jurors in capital cases is of common law origin. In several early capital cases, including Woods v. State, 43 Miss. 364 (1870), the Court said that separation of the jury under circumstances where the purity of the verdict might have been affected requires the conviction to be set aside even in the absence of any proof of an attempt to exert any pernicious influence on the jury; and that the separation of any of the jurors from their fellows during the progress of the trial, without being attended by a proper officer, would be conclusive evidence of an irregularity vitiating the verdict and rendering a new trial necessary. But the strong language of Woods must be read in light of the facts of that case. The opinion states that the jury was permitted to disperse for two nights during the trial and go at large until ten o'clock the next day. During the morning after the first day's trial, members of the jury were in the courthouse yard talking and mingling with citizens who were not members of the jury. Applied to the facts of that case, the Woods case was and is sound law, although the language of the opinion is inappropriate to an inadvertent separation for a brief time such as that involved in the present case.
*709 In Skates v. State, 64 Miss. 644, 1 So. 843 (1887), the jurors were allowed to go to a privy while the officer in charge was some seventy-five yards away and out of sight of the jurors. There was no showing that any other persons talked to the jurors, but since the privy was a public one, other persons might have been in the privy with the jurors. In rejecting the contention that the separation of the jury vitiated the verdict, the Court in Skates said:
There are to be found many expressions in our reported cases to the effect that where circumstances were shown which exposed the jury to the possibility of being tampered with, the verdict must be set aside unless it is affirmatively made to appear that no improper influences were brought to bear upon it. But this language must be interpreted by the circumstances of the case in which it was used... .
In all these cases the verdicts were set aside, and new trials awarded. It will be noted that in all of them it was either shown that other persons had been brought in contact with the jury, or that there was a separation of the jury under such circumstances as to afford a reasonable presumption that communication was had with others; there was in each case something more than a remote possibility that such communication was had, though in many of the cases observations are made by the court indicating that any separation of one juror from his fellows would be sufficient to annul the verdict unless it was affirmatively shown that no communication was had with others.
We find no fault with the result reached in either of the cases cited, but we do not concur in the language used in some of them from which the conclusion is sought to be drawn, and reasonably, that the mere withdrawal of a juror from the sight of his fellows and of the officer is under any and all circumstances a separation of the jury. Whether it is or is not must, as it seems to us, be dependent upon the circumstances of each particular case. Judges and jurors are but men, and we know of no reason why, in dealing with the action of jurors, any impracticable and unapproachable standard shall be adopted by courts to measure their conduct,  a standard which, if applied to the judges of the courts, would produce frequent miscarriages of justice. If the mere possibility of unlawful communication or influence is sufficient to annul a verdict, when shall one be said to be pure and free from suspicion? All our court-houses are in public places, and the public have right of access to them. At sessions of court many persons are there congregated, either from curiosity or by reasons of business for themselves or others. Jury-rooms open into the court-rooms, frequently filled with spectators, or by windows overlook the yards. Communication by writing, by signs, and by words is always possible, but it would be destructive to the ends of justice to hold that such possibility as this of unlawful influence should avoid verdicts upon which no just suspicion rests. To this all must agree. 64 Miss. at 651, 653, 1 So. at 845, 847.
In Haley v. State, 123 Miss. 87, 85 So. 129, 10 A.L.R. 462 (1920), the separation was brought about by a juror's illness and the Court reaffirmed the language in Skates, and added that "the true test there [in Skates] indicated is whether the judicial mind would conclude that unlawful influence has been exerted." 123 Miss. at 109, 85 So. at 133, 10 A.L.R. at 469.
In the recent capital case involving the question of separation of jurors, Wilson v. State, 248 So.2d 802 (1971), the opinion quoted approvingly from Woods, but in Wilson, as in Woods, the Court allowed the jury to disperse and go to their respective homes for the night. The opinion in Wilson stated the rule where the Court allows the dispersal of the jury overnight, but, as stated in Skates, the language must be interpreted according to the circumstances *710 of the case in which it was used. In Glass v. State, 278 So.2d 384 (Miss. 1973), the temporary separation was held not reversible, but the facts in that case make the decision inapplicable.
We are of the opinion that the separation of the two jurors should not vitiate the verdict in this case.
Affirmed.
All Justices concur, except INZER, J., RODGERS, P.J., and PATTERSON, J., who dissent.
INZER, Justice (dissenting):
With due deference, I am compelled to dissent in this case for the reason that in my opinion the separation of the jurors requires a reversal.
The appellant is a black man charged with the rape of a fourteen year old white girl. While the evidence on behalf of the state was sufficient to support a conviction, appellant testified in his own behalf and denied that he was guilty of the charge. This is the type of case that still rouses such public interest that makes it essential that all reasonable precautions be taken by the trial court to see that no outside influence is brought to bear on the jury trying the case. It is from this vantage point that the facts and circumstances relative to the separation of the jury should be viewed.
It must also be remembered that the charge upon which appellant was tried is still a capital offense although the death penalty can no longer be imposed. In Hudson v. McAdory, 268 So.2d 916 (Miss. 1972), a majority of this Court held that for bail purposes the term "capital offense" still applied to that class of cases where the legislature has authorized the infliction of the death penalty, although it can no longer be legally imposed. Reasons given for denying an accused the constitutional right to bail, were that it preserved to such a person his right to the added protection given in capital cases, such as a special venire; twelve peremptory challenges, instead of six; the right to have the jurors specially sworn to try the case, and other such rights. It follows that also preserved is the right of the accused to have the jury kept together without exception from the time they are specially sworn to try the case until finally discharged.
The record in this case shows that the jury was lodged in the Holiday Inn at Gulfport. Apparently, the jurors were assigned separate rooms in which there were telephones and no supervision by the bailiffs. There were two bailiffs to supervise the jurors. One for the women and one for the men. The bailiffs had their own separate rooms. The jurors were instructed by the bailiffs to meet at the elevator at the designated time to be transported to the courthouse. When the jurors got together and started to the automobile, Mr. Bosarge, one of the bailiffs, discovered that two of the jurors were missing. He had the group in his charge wait in front of the motel while he went back and knocked on the doors of the rooms of the missing jurors. Not getting any response, he thought that the jurors had gone to the courthouse with the other group. He then got in the car with the other jurors that were left waiting and went to the courthouse. After arriving at the courthouse he discovered that the jurors were still missing. A telephone call was made to the rooms of the missing jurors and they answered. They were told to remain in their rooms. Mr. Bosarge returned to the motel, picked up the two jurors and carried them to the courthouse where they were reunited with the other jurors. They told the bailiff that they had been in their rooms watching television. However, it is obvious from the testimony of the bailiffs that they had no knowledge of where these jurors had been or what they had been doing before or after they were missed. After appellant had developed this testimony, the only thing that the state did was to ask the two bailiffs if they had any knowledge *711 or information that the missing jurors or any of the jurors were in contact with unauthorized parties. They testified that they did not have any such knowledge or information.
In Organ v. State, 26 Miss. 78 (1853), (a case less than capital), this Court adopted a strict common law rule relative to the separation of the jurors. In doing so, the Court stated:
We think, therefore, that the regularity and purity which should characterize judicial proceedings, are best promoted by establishing the rule, which, though rigid, is the more plain and easy of application, that any separation of the juror from the presence of his fellows and the superintendence of the bailiff, is prima facie evidence of irregularity, and that his affidavit is inadmissible to justify his conduct during the separation. (26 Miss. at 83).
Through the years this rule has been materially modified where the crime involved was less than capital, and modified to some extent in cases involving capital offenses. However, up until the decision in this case the rule in capital cases has been as announced in Green v. State, 59 Miss. 501 (1882):
The separation of a juror from his fellows, under circumstances in which communication might be held with him, would, in a capital case at least, be fatal to the regularity of the proceedings, if no other fact was shown; for, as he might have been tampered with, the law will presume that it was done. If, however, it is clearly shown that in fact the juror was not communicated with, the presumption no longer exists, and the verdict will be upheld.
(59 Miss. at 505, 506).
In other words, when the separation of the juror from his fellows is shown, the burden is upon the state to show that no communication was had with the juror.
In Wilson v. State, 248 So.2d 802 (Miss. 1971), we reaffirmed the rule that in capital cases, the accused has a right to a duly constituted court which includes a jury whose verdict is beyond question. In order to assure such a verdict, the law requires that the jury be kept together from the time they are specially sworn until they are finally discharged. A departure from this rule is not a mere technical error, but goes to the very organization and constitution of the court.
The majority seems to hold that the facts in this case only establish a mere possibility that the jurors were communicated with. With this I cannot agree. When jurors are lodged in a hotel in separate rooms and perhaps in separate parts of the hotel, having access to a telephone without any supervision of a bailiff, there is in fact, a complete separation of the jurors. The jurors under such circumstances, if so inclined, are free to leave their rooms at any time or communicate with anyone they may desire by telephone. If this procedure is permissible, why make a pretense of keeping the jurors together? Why not let them separate under the instructions of the court, go to their respective homes, and save the county the expense of housing and feeding them? They certainly would be no more susceptible to outside influence in their homes than they would under the circumstances of this case.
The effect of the majority holding is to put the burden on the accused to show prejudice when there is a separation of the jurors, even in a capital case. Perhaps the underlying reason for such holding is that the death penalty can no longer be legally imposed. If this be true, it would be much better to frankly say so and recognize that in reality, capital offenses no longer exist in this state. I would be in accord with such a holding, provided it would also apply to the constitutional right of an accused to bail. Otherwise, all rules relative to capital offenses should be strictly followed.
*712 It is my opinion that the facts and circumstances of this case raise a reasonable probability that one or more of the jurors was subjected to outside influence and that the state failed to overcome the presumption that arose from such showing. For this reason this case should be reversed and remanded.
RODGERS, P.J., and PATTERSON, J., join in this dissent.