### ORGAN *v*. THE STATE, 26 Miss. Rep., 78.

#### ASSAULT AND BATTERY WITH INTENT TO KILL.

The *venire* does not necessarily constitute a part of the record, unless placed there by being embodied in the bill of exceptions.

It is not competent for the prisoner to question the sufficiency of the *venire* on error, when he has raised no objections to it in the court below, by motion or plea in abatement, but has pleaded in bar and been convicted.

Any separation of a juror from his fellows, or from the superintendence of the bailiff is *prima facie* evidence of irregularity; and his affidavit is inadmissible to justify his conduct during the separation.

Error to Hinds circuit court. BARNETT, J.

Madison Organ was indicted in the circuit court of Hinds county, for an assault and battery, with intent to kill J. M. Currie, and at the September term of said court, 1852, he was found guilty as charged in the indictment. A motion was made for a new trial, but refused by the court below.

The jury separated before they rendered their verdict in the case, by William S. Mullen, who was one of them, leaving the other eleven jurors without permission of the court, as they were about retiring to their room to consider of their verdict, and passing by a number of persons in conversation in the court-house and going out of the house, and he was absent two or three minutes, whilst the balance of the jurors, under charge of the proper officer, went up-stairs, and left Mullen behind, but he joined them in a short time. The affidavit of the juror, Mullen, was introduced to show that he did not talk with any one about the case, or hear any one talk about the case while absent from the other jurors.

The defendant prayed a writ of error to this court.

*Grafton Baker*, for plaintiff in error.

Every step essential to a regular conviction, in cases highly

penal like this, should appear by the record of the proceedings to have been properly taken.

What the law requires to be done, and to appear of record, can, if done, only be made to appear by the record itself, or an exemplification of the record. It is perfectly immaterial whether the act required, be or be not performed, if it do not appear of record. Elliot v. Piersol et al., 1 Peters, 340; Dakin v. Hudson, 6 Conn., 224.

Apply these principles to the record in this case, and it is clear this conviction cannot stand.

By the second section of the act prescribing the mode of drawing and empanelling juries, the names of the jurors drawn are required to be entered by the clerk on the minutes of the court. Hutch. Dig., 886. This does not appear by the record to have been done.

By the 5th section of the same act, the clerk is required to issue " a *venire facias* according to law," and the sheriff shall " summon the jurors named in such *venire facias,*" etc. Neither of these acts appears by the record to have been performed. A record imports absolute verity, and the legal presumption is, that the circuit court caused a record to be made of every step which was actually taken in the progress of the cause.

And hence it is that the non-performance of an act, or the non-existence of a fact, where the performance in the one case, or the existence in the other, should by law appear of record, may be proved by the record. So if a material matter does not appear by the record which the law requires so to appear, the just inference is, that it did not exist or take place. Thornton v. Slatford, 1 Salkeld, 284. These principles apply to this record; it clearly appears that no *venire facias* in the case was issued, served, or returned.

The circuit courts of this state are courts of oyer and terminer. 1 How., 241. No issue of fact can be tried before them without a precept, a *venire facias,* to summon a jury; and such precept should be good in form and substance, and returned duly executed. 1 Chit. Cr. Law, 508, 509; 2 Hale, 260, 261; 3 Bacon, 730; Peck, 140–166; 18 Johns., 212.

No court is authorized to put any citizen on trial for a capital

or infamous crime, unless a grand jury of the proper county, organized as the law directs, has preferred a formal charge against him. Thomas v. State, 5 How., 32. The record does not show that the grand jury was regularly organized.

*D. C. Glenn,* attorney general.

1. The first error assigned is, that the court below permitted a witness to testify in detailing his evidence, to an exclamation made by a by-stander, " that Organ had stabbed Miller." I do not conceive it well taken. This exclamation was made use of the moment the stabbing occurred. The witness was forced to state it in the natural order of his evidence. It was to some extent a part of the *res gestæ.* Its admissibility was to be determined by the discretion of the judge. The main point in such matters is, whether the exclamation which here came incidentally into proof, was contemporaneous with the main fact under consideration, and whether it was so connected with it as to illustrate its character. I think it was. In Lord George Gordon's case, the cries of the mob were received as part of the *res gestæ,* and showing the character of the principal fact. This case, though not similar, is somewhat analogous to the one just cited. 1 Greenl., § 108, and note, and cases therein cited.

2. A juror separated from his fellows for two minutes. It is shown by his own affidavit and that of a brother juror, that no one spoke to him. This evidence was objected to, but was received. This was proper. 2 Yerger, 60 ; 7 Humph., 544.

This is not a capital case. The state has shown affirmatively that the juror was not tampered with ; this is sufficient. 8 Humph., 597 ; 7 N. H., 290 ; 4 Cowen, 26 ; 1 Conn., 401 ; 1 Dev. and Batt., 500 ; 1 Blackf., 25.

HANDY, J.:

The first, second, and third errors are assigned to the *venire facias* for the grand jury, the return on it, and the oath administered to the grand jury when it was organized in the circuit court. No motion to quash was made, nor plea in abatement filed, presenting any of these objections, but the prisoner appeared and pleaded in bar to the indictment.

The *venire* does not constitute a necessary part of the record,

unless some objection has been taken to it in the court below, and it is introduced into the record by bill of exceptions, for the purpose of having its validity examined in this court. Boyd v. State, 1 How., 253. Its absence from the record is, therefore, no ground of error.

Nor is it competent for the prisoner to question its sufficiency in this court, when he has raised no objection to it either by motion or plea in abatement, in the court below, but has pleaded in bar, and been convicted. Brantley v. State, 13 S. and M., 468.

It is also urged, that the court erred in refusing to exclude from the jury the exclamation of the witness Obannion, as to the prisoner having stabbed another person than the party named in the indictment. None of the circumstances connected with that exclamation are set forth in the bill of exceptions. Nothing appears but the isolated expression, and the bill of exceptions does not show that this was all the testimony of the witness. Other facts and circumstances might have been stated by the witness necessarily connected with the *res gestæ*, and making the exclamation proper evidence. Experience shows that witnesses are not unfrequently in the habit of stating much irrelevant matter in giving their testimony, and also, that many things which, taken disconnected from all the facts and circumstances proved by the witness, seem to have no relevancy to the cause, when taken in connection with the whole evidence, have a most important bearing. In the absence, then, of all other testimony, this court cannot properly determine whether this evidence was improperly admitted, and will presume that the court below acted properly in refusing to exclude it. Otherwise, it would be in the power of any party on trial, to isolate from the entire evidence any portion of it, seeming, when alone, to be wholly foreign to the *res gestæ*, except to its admission, and have the judgment against him reversed in this court, when, upon the whole evidence, it would appear that the court below acted with perfect propriety.

It is next objected, that after the case had been submitted to the jury, and they had left the bar to retire to their room to deliberate on their verdict, one of them separated for a few minutes from his fellows, and was out of the presence and supervis-

ion of the bailiff. This presents a point of much diversity of opinion among the most learned courts of the Union.

On the one hand, it is held to be incumbent on the accused to show something more than the mere separation of the jury to set aside the verdict. This is the rule in New Hampshire, in Connecticut, in North Carolina, and in Indiana. 7 N. H., 290; State v. Babcock, 1 Conn., 401; State v. Miller, 1 Dev. and Batt., 500; Wyatt v. State, 1 Blackf., 25.

On the contrary, it is held in Virginia and in Tennessee, that if the separation was such that the juror might have been improperly influenced by others, it is sufficient ground for setting aside the verdict. Commonwealth v. McCall, 1 Va. Cases, 271; Overbee v. Commonwealth, 1 Rob., 756; 10 Yerger, 241. The reason of this rule seems to be fully sanctioned in Massachusetts, in 12 Pick., 496, and this court has acted in conformity to it. Hare v. State, 4 How., 187; Boles v. State, 13 S. and M., 398.

We are satisfied that this is the sound and safe rule. In dispensing with the ancient rigor in the treatment of juries, which tended to operate coercively on their judgment, the most enlightened courts have ever firmly adhered to the necessity of keeping the jury together. Any departure from this practice, which is not sufficiently explained to exclude the possibility of undue influence in the particular instance, must lead to the greatest uncertainty in the rule, the most unsafe judicial discretion in its application, and the destruction of public confidence in the solemnity of trials by jury. If any separation is to be allowed, without incurring the imputation of irregularity, for what length of time and for what purposes may it be? How frequently may it be practiced, and to what distance may it extend? By what means are communications between the juror and other persons which may take place, and which must necessarily be secret, to be disclosed?

These considerations show the looseness and dangerous uncertainties to which the practice would lead, and the soundness of the rule, that every separation of the juror from his fellows and the bailiff, should be treated as vitiating the verdict, unless it be affirmatively proved by competent evidence that the juror has been guilty of no improper conduct.

This leads us to consider the last question, whether it is proper to admit the juror himself as a witness to prove the propriety of his own conduct.

We think such a practice of the most evil tendency. If there have been corrupt communications between the juror and others, they must from their nature be secret, and, in almost every case, impossible of proof by other testimony. Any juror who would be guilty of corruption, would not scruple to purge his conduct of all suspicion by the most comprehensive swearing, and then the only security for justice would be the right of the judge to examine his credibility; and as there would probably be no evidence to impeach his veracity, and no circumstances going to show that he was tampered with, it would rarely, if ever occur, that the judge would treat his testimony as false. Thus the verdict, however corrupt, is established beyond the possibility of correction.

We think, therefore, that the regularity and purity which should characterize judicial proceedings are best promoted by establishing the rule, which, though rigid, is the more plain and easy of application, that any separation of the juror from the presence of his fellows, and the superintendence of the bailiff, is *prima facie* evidence of irregularity, and that his affidavit is inadmissible to justify his conduct during the separation.

For these reasons, we reverse the judgment, and grant a new trial.