(June 13, 1905.)

## STATE v. WEST.

[81 Pac. 107.]

SEPARATION OF JURY AFTER SUBMISSION OF CASE—AFFIDAVIT OF JUROR EXPLAINING HIS CONDUCT—SHOULD BE CORROBORATED.

1.    Where a juror deliberately separates himself from the other jurors after the case has been finally submitted to the jury and leaves the bailiff and remains out of view of the bailiff and other jurors for a period of from three to five minutes, and his whereabouts and conduct during that time are unexplained except by his own affidavit, and it does not appear that the absence was the result of necessity, accident or mistake, a new trial will be granted.

2.    The uncorroborated affidavit alone of a juror who deliberately separates himself from his associates and bailiff in disregard of the law, as well as the admonitions of the court, should not be accepted as a satisfactory explanation of his whereabouts and conduct during such separation.

(Syllabus by the court.)

APPEAL from the District Court of the Fourth Judicial District, in and for the County of Elmore.    Honorable Lyttleton Price, Judge.

Defendant was convicted of the crime of grand larceny and sentenced to imprisonment in the state penitentiary for a term of four years.    From the judgment and an order denying his motion for a new trial, defendant appeals.    Reversed.

N. M. Ruick, W. C. Howie and C. C. Cavanah, for Appellant.

The jury separated after the case was finally submitted to

them for consideration, and after they had retired to deliberate upon their verdict. A review of the facts disclosed by the affidavits made by several persons and presented on defendant's motion for new trial will show that the jury separated as stated. Our statute expressly provides that, after the jury has retired to deliberate upon their verdict, they must be kept together. (Idaho Pen. Code, sec. 5480, subd. 3.) The separation of the jury in a criminal case after retiring to deliberate upon their verdict is made a ground for a new trial by the statutes of this state. (Idaho Pen. Code 1901, secs. 5522, 5722, subd. 3; *People v. Backus,* 5 Cal. 275; *People v. Brannigan,* 21 Cal. 337; *People v. Thornton,* 74 Cal. 482, 16 Pac. 244; *People v. Hawley,* 111 Cal. 78, 43 Pac. 405; *People v. Adams,* 143 Cal. 208, 101 Am. St. Rep. 92, 76 Pac. 954; *State v. Place,* 5 Wash. 773, 32 Pac. 736; *Darter v. State,* 39 Tex. Cr. Rep. 40-47, 44 S. W. 850; *State v. Mowland,* 119 Mo. 419, 24 S. W. 1016; *State v. Parrant,* 16 Minn. 178; *Weis v. State,* 22 Ohio St. 486-491; *McLain v. State,* 10 Yerg. 242, 31 Am. Dec. 573; *State v. Populus,* 12 La. Ann. 710; *Peiffer v. Commonwealth,* 15 Pa. St. 468, 53 Am. Dec. 605; Abbott's Criminal Briefs, 286; 2 Spelling on New Trial and Appellate Practice, sec. 59; *Daniel v. State,* 56 Ga. 653.)

J. J. Guheen, Attorney General, K. I. Perky and Edwin A. Snow, for the State.

The statute is not absolutely and at all events ground for a new trial. But each separation must be judged by the facts surrounding it; the fact that one man steps away a short distance under such circumstances that prejudice could not possibly result would not be a ground for a new trial; the fact that jurors separate so as to become subject to prejudicial influences would be ground for new trial. It seems to us that this is the only ground sanctioned by modern authority and upheld by reason. Practically every state that has a statute similar to ours follows it. *State v. Harris,* 12 Nev. 414, where the court says: ''Where it is shown to the satisfaction of the

court that there was no misconduct on the part of the jurors, the mere separation of the jury is not ground for a new trial.'' To the same effect see *Goersen v. Commonwealth,* 106 Pa. St. 477, 51 Am. Rep. 534; *People v. Symonds,* 22 Cal. 352, where there is a very good discussion of the principle of construction of a statute like ours. (*People v. Moore,* 41 Cal. 238; *People v. Wheatley,* 88 Cal. 114, 25 Pac. 1109; *Territory v. Hart,* 7 Mont. 489, 17 Pac. 718; *Territory v. Clayton,* 8 Mont. 1, 19 Pac. 293; *People v. Kelly,* 46 Cal. 355; *Stewart v. State,* 31 Tex. Cr. Rep. 152, 19 S. W. 908; *Bylew v. Commonwealth,* 91 Ky. 200, 15 S. W. 356; *Territory v. King,* 6 Dak. 131, 50 N. W. 623; *Robinson v. State,* 109 Ga. 506, 34 S. E. 1017; *State v. Igo,* 21 Mo. 459; *State v. Pollard,* 14 Mo. App. 583; 1 Spelling on New Trial and Appellate Practice, p. 267; 12 Cyc. of Law & Pr. 1904, p. 724.)

AILSHIE, J.—It is contended by appellant in this case that there was such a separation of the jury after the case had been finally submitted to them for their consideration as to entitle him to a new trial. The facts constituting the separation are substantially as follows: The case was finally submitted to the jury about 11:30 o'clock A. M., February 24th, and they thereupon retired to deliberate as to their verdict. Between 12 and 1 o'clock they were taken by the bailiff to their dinner, and about 1 o'clock they all came out of the dining-room and stood on the sidewalk in front of the hotel. While the jury were standing on the sidewalk in charge of the bailiff, the juror Canfield, without saying anything to anyone and without any permission, left the bailiff and the remainder of the jury and walked down Main street in the town of Mountainhome, a short distance, and then turned the corner and proceeded up another street at right angle to Main street for a distance of about one hundred and fifty feet from the corner and entered a store. The juror was gone for a period of about five minutes, and then returned and joined the other jurors who had remained during the meanwhile in front of the hotel. The prosecution furnished the affidavit of the bailiff to the effect that he remained with the eleven jurors

in front of the hotel while Canfield was gone, and that they did not at that time discuss the case in any respect whatever, and that the juror Canfield was out of view of the bailiff for a period of from three to five minutes. One of the jurors made an affidavit to the same effect as that made by the bailiff. The state also produced the affidavit of the juror Canfield in which he deposes to separating from the remainder of the jury and "that to the best of this affiant's belief he left said jurors and went about three hundred feet to a store run by John Joseph, after a sack of tobacco; that about one hundred and fifty feet he was not in sight of the bailiff of the said jury; that during the time that this deponent was separated from the said jury, which was from three to five minutes, that during the said time he was absent this deponent is positive that he spoke to no one about said case or made any allusion thereto, and that no one spoke to said deponent about said case or made any allusion thereto; that nothing transpired during said absence that would prejudice the mind of this deponent for or against the defendant."

John Joseph testified that he was the proprietor of the store that Canfield claims to have visited, and that he "believes that he was in charge of the said store between 12 and 1 o'clock on Wednesday, the twenty-fourth day of February, 1904, and he is positive that if Hiram Canfield bought a sack of tobacco during the hour above mentioned, that he did not speak of the above-mentioned case to said Canfield." He further testifies that it was seldom that any persons were loafing in his store. Joseph's wife testifies that she "believes" that her husband was in charge of the store on the day mentioned. This constitutes the showing made by the state to rebut the presumption of prejudice to the defendant. It will be noted that Joseph, the proprietor of the store, really testifies to nothing. He does not pretend to remember whether or not the juror came to his store, nor does he appear to remember anything in connection therewith. We then have only the affidavit of the juror himself in explanation of his conduct and whereabouts for the period of from three to five minutes while he was out of sight of the bailiff and other jurors. The

juror himself does not undertake to state the persons with whom he met nor the conversations he had during the period of his absence. In *State v. Sly, ante,* p. 110, 80 Pac. 1125, just decided, we announced the rule to be followed in this state in relation to separations of juries as follows: ''Then when the defendant shows that the jury have separated in violation of the statute, he has made a sufficient *prima facie* showing to entitle him to a new trial and to shift the burden onto the state of showing clearly and beyond a reasonable doubt that nothing transpired during such separation or on account of the separation that did or could prejudice the defendant, and that if the state succeeds in making such a showing then a new trial should be denied.'' In this case the state has failed to make such a showing as would rebut the presumption of prejudice. Here the juror was not absent from his associates by reason of any mistake or through any necessity. It was a deliberate absence on a mission which could have as easily been discharged by the bailiff or any other person for him. His conduct and whereabouts is not satisfactorily explained. As much mischief might be done by way of prejudicial conversations or vicious influence in the period of five minutes as in that many hours. We do not think that the uncorroborated affidavit of a juror who thus disregards his duty and the oath which he has heard administered to his bailiff should be accepted as a clear and satisfactory explanation of his conduct, and this is especially emphasized here where the juror's affidavit itself is neither explicit nor satisfactory.

In *People v. Backus,* 5 Cal. 275, *Hempton v. State,* 111 Wis. 127, 86 N. W. 596, and *Organ v. State,* 26 Miss. 78, it was held that the uncorroborated affidavit of a juror was not sufficient to purge his conduct from the imputation of corruption or impropriety. Upon this point we think those authorities are sound. We do not think, however, that such affidavits are inadmissible, but that, uncorroborated, they are insufficient For this misconduct of the juror the case must be reversed.

There are many cases where temporary and necessary separations have been held trivial and nonprejudicial, but in every such case called to our attention, occurring in a state following a similar rule to that adopted by this court, the jurors have either remained within view of the bailiff or been momentarily absent by reason of a pressing necessity and not as a voluntary and deliberate act of separation. In some cases the courts have held that the facts by which the separation was shown were themselves sufficient to rebut the presumption of prejudice, and we can see how that might sometimes be true.

Appellant also complains of the refusal of the court to give the following instructions requested by him: ''Possession of property recently stolen, while evidence of guilt, is not conclusive, and where the defendant gives a reasonable explanation of his possession, the jury cannot arbitrarily ignore such evidence. If the facts stated by the defendant and the witnesses produced by him be true, the jury cannot find him guilty. It devolves upon the state to establish defendant's guilt beyond a reasonable doubt by legal evidence, and until that is done the presumption of innocence is an absolute shield for him.'' The court refused to give this instruction on the ground that it was covered by the general instructions. We think this request was substantially covered by the court's instructions, and there was, therefore, no error in refusing it.

The appellant assigns as error the insufficiency of the evidence to sustain the verdict, but since this case must be reversed and a new trial had, we refrain from any discussion of the evidence in the case. The judgment is reversed and a new trial granted.

Stockslager, C. J., and Sullivan, J., concur.