CLARK *v.* STATE.

Division B. Oct. 2, 1950.

No. 37562 (48 So. (2d) 127)

Dyer & Campbell, for appellant.

**George H. Ethridge,** Assistant Attorney General, for appellee.

Coleman, C.

The appellant was convicted in the Circuit Court of Washington County of the crime of manslaughter, and was sentenced to the minimum penitentiary term of two years.

About 9:30 a.m. on November 30, 1948, a policeman, who had been called to Jeu Sing's grocery store in Greenville, found the aged Chinese fully conscious, standing behind a counter in the store. He was bleeding from his left ear. A sweet potato, estimated to weigh four or five pounds, lay on the floor nearby. The officer took the old man to a doctor, who examined him and dismissed him. That same afternoon the police were again summoned to the store, but found it locked. They broke open the door. Jeu Sing was lying on the kitchen floor in an unconscious condition. He was taken to the hospital and died without regaining consciousness.

The undisputed testimony of an eminent physician in Greenville was that death had been caused by "an injury to the brain or blood vessels supplying the brain—hem-

orrhage'', that this injury was inflicted by ''some blunt instrument, something that did not break the skin''; and that the injury could have been caused ''by a sweet potato thrown by an eighteen year old man'' or ''by a fall such as hitting the side of a refrigerator'' or like object. Jeu Sing made a statement to the police officer on the occasion of the first call, but because it was neither a part of the res gestae nor a dying declaration the statement was not admitted in evidence.

On the morning of March 5, 1949, three months after the death of Jeu Sing, the appellant, eighteen years of age, picked up some chewing gum in a Chinese store, ran from the scene, and was arrested for that offense. While in custody, he was questioned with reference to the death of Jeu Sing, and, according to the testimony of four policemen, freely and voluntarily confessed that he killed the deceased by striking him a blow on the head with the sweet potato found on the floor of the store. He said that he had made a small purchase, there was some misunderstanding about the change he received, and Jeu Sing cursed him as he was leaving, whereupon he seized the sweet potato from a convenient bin, hurled it at the old merchant, and struck him on the side of the head. In fact, there were two confessions, both of like import, one made on the afternoon of the arrest, and another made the next morning.

It must also be noted that after his arrest, the appellant was taken to the store by the officer and there re-enacted the crime. He noted voluntarily that the cash register had been moved since the day that he struck the deceased. Two of his fellow-inmates in the county jail testified that he had told them he killed the deceased with a sweet potato, although the defendant testified in contradiction that he told them he was in jail for burning a barn.

As to the voluntary character of the confessions, the trial judge heard evidence, both for the State and for the appellant, outside the hearing and presence of the jury, as required in the case of English v. State, 206 Miss.

170, 39 So. (2d) 876. The Court held the confessions to have been freely and voluntarily given, and admitted them. Appellant testified that he gave and signed the written confessions, but claimed that he did so because one of the police officers threatened to blow his brains out if he did not confess. The exact language which the appellant attributed to the officer was: "Come here, Alex. If you don't say you killed that Chinaman, I will blow your damned brains out." In addition to this, the defendant produced several witnesses who swore that on the day of Jeu Sing's death, the defendant was picking cotton with them in a field considerably distant from Greenville.

Appellant assigns three separate grounds for the reversal of the conviction:

I. It is contended that the proof aliunde the confession was insufficient to establish the corpus delicti.

The facts of this case, already stated, are not the same as, but they are identically analogous to, those in Phillips v. State, 1944, 196 Miss. 194, 16 So. (2d) 630, 631. This is one of the most recent decisions of the Court on this question, and was a case in which the death penalty was inflicted. We quote: "Our Court and others are committed to the principle that ▮▮ where there is substantial evidence tending to prove the corpus delicti, although not sufficient to prove it beyond a reasonable doubt, the confession is admissible for that purpose." This Court has adhered to this principle in no less than nine reported cases. See Citations, Mississippi Digest, Criminal Law, 535(2). Also see reference in Greenlee v. State, 188 Miss. 387, 195 So. 312, to the holding in Heard v. State, 1882, 59 Miss. 545, that ▮▮ the reason for requiring proof of corpus delicti aliunde confession is to satisfy the mind that it is a real and not an imaginary crime which has been confessed.

The circumstances under which Jeu Sing was found, his condition when found, the testimony of the doctor as to the cause of death, all show that here was no con-

fession to an imaginary crime. Appellant earnestly contends that aliunde the confessions it would be just as reasonable to assume that deceased fell over an exposed pipe, located in the store, or fell against some other object. On the other hand, reasonable men would conclude that had the deceased merely fallen accidentally, the police would not have been called.

II. The second contention is that the confessions were not shown to have been freely and voluntarily made.

The testimony as to the voluntary character of the confessions is voluminous. All the officers who were present or who had anything to do with it were placed on the witness stand and were very vigorously examined. They denied all use of threats, coercion, or hope of reward, and there is no testimony of anything of this kind, except that of the defendant already referred to.

Appellant makes the point that he was not warned that his confessions would be used against him. ██ A free and voluntary confession made by an accused while under arrest is admissible, although accused had not been warned that what he says may be used against him. The numerous citations to this effect are collected in Mississippi Digest, Criminal Law, 518(1). Included is the case of McGee v. State, Miss., 40 So. (2d) 160, appeal dismissed and certiorari denied by the United States Supreme Court, 338 U. S. 805, 70 S. Ct. 77, 94 L. Ed. —.

 Unless the trial court's decision that confessions were voluntarily made, and therefore could be introduced in evidence, was manifestly wrong, the Supreme Court will affirm his action. Moore v. State, 207 Miss. 140, 41 So. (2d) 368. Appeal dismissed and certiorari denied, 338 U. S. 844, 70 S. Ct. 93, 94 L. Ed. —. The long line of prior Mississippi cases consistently agreeing with this holding, are listed in Mississippi Digest, Criminal Law, 1158(4).

It is interesting to note, and in point here, that the murder of which Moore was convicted, and for which

he was sentenced to suffer death, was committed on January 27, and he was not taken into custody, for investigation as to other offenses, until March 8 following.

Examination of the testimony of the officers in the case now before us, subjected to vigorous cross-examination, fails to reveal any reason that would permit us to say that the trial judge was manifestly wrong in holding the confessions in this case to have been voluntarily made.

Appellant cites us to Haley v. Ohio, 332 U. S. 596, 68 S. Ct. 302, 92 L. Ed. 224, but the facts in this case are not analogous to those alleged in the Haley case. See the discussion of the Haley case in Moore v. State, supra.

The weight and sufficiency of the confessions were also submitted to the trial jury under proper instructions of the court.

III. This brings us to the third assignment of error, which arose in this manner. When the hour for lunch had arrived, the trial judge inquired of counsel for the State and the defendant, in the presence of the jury, whether in view of the fact that this was not a capital case if it was desired that the jury be kept together. Counsel for the State indicated that they had no objection to the dispersal. Counsel for the defendant announced that considering the seriousness of the case and his responsibility in the premises, he did not care to waive any of the rights of defendant. The court then said that probably the jury should be kept together, and facetiously, "if they are kept together they can eat at the county's expense". Whereupon two bailiffs were sworn and put in charge of the jury, and the jury was kept together during the noon hour.

After the noon hour counsel for appellant moved the court to discharge the jury and declare a mistrial for the reason that the attorneys for the defendant and defendant "have unquestionably been prejudiced in the eyes of the jury by unnecessarily being called upon to request that the jury be kept together as the law requires, thereby

putting the defendant's attorneys and defendant in the position of reflecting upon the integrity of the jury". The motion was overruled.

Appellant did not request the trial judge to admonish the jury that the law required them to be kept together, or that the incident should not be allowed to enter into their consideration of the case, nor did he request the trial judge to poll the jury as to whether they would allow the matter to affect their verdict. No admonition was given.

Of course it is a fundamental rule well understood by all judges that the trial judge should refrain from making unnecessary comments or doing any act which, in the presence of the jury, might cause prejudice against defendants on trial for criminal offenses, or which is calculated to influence the minds of the jury outside of the law and the evidence. This supports the further rule that remarks of trial judges made in the presence of a jury, which have a reasonable tendency to prejudice the minds of the jury against the defendant, are grounds for reversal. In fact, we have held, Collins v. State, 99 Miss. 47, 54 So. 665, Ann. Cas. 1913C, 1256, that the trial judge must use the greatest care to avoid prejudicing the cause of the State or of accused by his language or conduct. We have further held, Garrett v. State, 187 Miss. 441, 193 So. 452, that if it should be obvious that the attitude and conduct of the trial judge have brought about an unfair trial, the case will be reversed and a new trial will be granted.

Did the remarks of the trial judge in this particular instance reasonably tend to prejudice the minds of the jury against the defendant?

1. As to the remark that the jury would receive their noon meal at the county's expense, it has been the law of this state since the enactment of Chapter 180, Laws of 1946, that juries kept together during the course of a felony trial are boarded and lodged at the expense of the county. Therefore, this remark of the judge did no more than announce the law of the state on this question, and

could not have been prejudicial to defendant. In other words, the jurors were to be the recipients of a free meal, and that fact, within itself, since it is the law of the state, could not have prejudiced the jury against the defendant.

2. As to the dispersal of the jury, the defendant in a prosecution for felony is entitled to have the jury kept together without exception from the time it is selected until finally discharged. Carter v. State, 78 Miss. 348, 29 So. 148. The separation of even one juror in such cases is an irregularity which will vitiate the verdict. Organ v. State, 26 Miss. 78, 1 Morr. St. Cas. 684. Even at the request of the defendant, they cannot be dispersed in a capital case. Woods v. State, 43 Miss. 364, 2 Morr. St. Cas. 1624. Exceptions have been made. (1) Where it was highly improbable that the juror in a murder prosecution saw any one while separated. Cunningham v. State, 94 Miss. 228, 48 So. 297; (2) where the juror was necessarily separated because of illness and saw no one but a doctor during the separation. Haley v. State, 123 Miss. 87, 85 So. 129, 10 A. L. R. 462. The purpose of the requirement, as readily can be seen, is to prevent access to outside influences.

Appellant cites a decision of the Supreme Court of Georgia, Bragg v. State, 15 Ga. App. 623, 84 S. E. 82, holding that to ask counsel publicly, in the presence of the jury, whether the jury should be allowed to disperse is error. Counsel frankly stated in his brief that he had before him only a syllabus of the case as taken from the American Digest System. We have read the entire reported case and find that the Georgia Court did go further however and say that not in every case had this been considered by that Court to constitute reversible error.

He also cites Thomas v. State, 124 Ala. 48, 27 So. 315. In that case, the jury had heard all of the evidence and had been considering its verdict for at least two days. It had reported several times that it was unable to agree on a verdict and had requested that it be discharged. The trial judge told the jury that he could not discharge them

without the consent of the defendant and then asked the defendant, in the presence of the jury, if he would consent. The defendant replied in the negative, the jury was again retired, and in about twenty minutes returned a verdict of guilty. Of course, it easily can be seen why this kind of an occurrence at that stage of the trial would constitute reversible error.

Having no precedents of our own, or from any other jurisdiction, as to this particular situation now confronting us, having no showing whatever of prejudicial effect other than the simple fact of the occurrence as related, we must apply our common sense and trial experience to the consideration of whether it reasonably could have caused the jury to be prejudiced against this defendant. We are agreed that the trial judge should not have made this inquiry in the presence of the jury. We are likewise agreed, however, under all the facts, circumstances, and considerations herein set out, that it cannot reasonably be said to have resulted in prejudice to the defendant.

Affirmed.

PER CURIAM.

The above opinion is adopted as the opinion of the Court, and for the reasons therein indicated the case is affirmed.