GRIMSLEY *v.* STATE.

In Banc. Oct. 8, 1951.

No. 38098 (54 So. (2d) 277)

Homer W. Pittman and Earle L. Wingo, for appellant.

**George H. Ethridge,** Assistant Attorney General, for appellee.

**Roberds, J.**

Appellant was convicted of grand larceny in the stealing of pulpwood of the value of $28.80 and sentenced to the state penitentiary for four years. She appeals. She assigns and argues a number of asserted errors, but, in view of the conclusion we have reached, it is necessary for us to discuss and pass upon only one of them, and that is whether the dispersal of the jury during the trial of the case, as hereinafter set out, is reversible error.

It is first necessary to try to deduce the true facts. This must be done primarily from the testimony of A. L. Barksdale, a member of the trial jury, placed upon the stand by the defendant in support of her motion for a new trial, and who testified without objection. The substance of his testimony, fairly interpreted, is about this:

The trial started on Friday and ran into Saturday. The State and defendant both closed their testimony around 10:30 o'clock Saturday morning. The trial judge announced that a recess of ten minutes would be taken to go for coffee while the attorneys prepared instructions. The jurors dispersed. Some went to Pal's Grill, two hundred to three hundred yards from the courthouse, for coffee; some stayed on the outside of the Grill; others were in front of Kirkwood's Furniture Store, about five hundred feet from the courthouse; others remained around in front of the courthouse. Barksdale did not know where the bailiffs were. He thought they were at the Grill. In any event, they were not with those who remained out of the Grill. These jurors were not in charge of a bailiff. Barksdale saw jurors talking to other persons. He talked with some himself. The conversations he heard had no reference to the case being tried. That was true as to him. He saw jurors talking with outside parties but he could not hear what was being said, and, therefore, did not know the subjects of the conversations. If any effort was made to influence any juror about the case being tried he knew nothing of it.

The State introduced James McGregor, a member of the jury. He was asked by the prosecuting attorney "whether or not the jury was granted a short recess and excused approximately ten minutes", and replied "That's right."

"Q. Is it true, McGregor, that the jury left the jury room and that some of them went and got coffee? A. Yes, sir.

"Q. Are you one of the ones that got coffee? A. Yes, sir." He was then asked if he communicated with any-

one other than a fellow juror. Objection was here made by counsel for defendant and extended colloquy had between the judge and the attorneys. Finally, counsel for the State said he proposed to show that "* * * each member of the jury was not communicated with so as to injure the defendant." Counsel for defendant then said "We will admit that you are going to show by these jurors that they were not communicated with, but we still say that it is inadmissible"; whereupon the State withdrew the witness. It is likely counsel for defendant meant by his statement, or intended to say, that the jurors proposed to be called by the State would testify no one had communicated with them about the case. Be that as it may, that does not change the testimony given by Barksdale, who was positive that he and some of the other jurors did talk to outside persons, but, as to himself, and, as far as he knew as to the other jurors, there was no discussion of the case with outsiders. We have, then, the jurors dispersing, some in one place two or three hundred yards from the other, some inside a cafe out of view of the others, some talking with outside persons, a part of them at least (the exact number not being shown) not accompanied by or in the sight of a deputy.

Now as to the authorities. In the old case of Organ v. State, 26 Miss. 78, Mullins, a member of the jury, without permission, separated himself from the other jurors as they were about to retire to consider their verdict. Mullins went out of the courtroom, passing some people therein who were conversing with each other. He was absent two or three minutes, the bailiff remaining with the other jurors. No officer accompanied Mullins. It is not shown he spoke to any one or any one spoke to him. The Court reversed the case because of this conduct of the juror. It also held that a juror could not testify to sustain his verdict, a doubtful holding. The Court used this language:

"We think such a practice of the most evil tendency. If there have been corrupt communications between the juror and others, they must from their nature be secret, and, in almost every case, impossible of proof by other testimony. Any juror who would be guilty of corruption, would not scruple to purge his conduct of all suspicion by the most compehensive swearing, and then the only security for justice would be the right of the judge to examine his credibility; and as there would probably be no evidence to impeach his veracity, and no circumstances going to show that he was tampered with, it would rarely, if ever, occur that the judge would treat his testimony as false. Thus the verdict, however corrupt, is established beyond the possibility of correction.

"We think, therefore, that the regularity and purity which should characterize judicial proceedings, are best promoted by establishing the rule, which though rigid, is the more plain and easy of application, that █ any separation of the juror from the presence of his fellows and the superintendence of the bailiff, is prima faice evidence of irregularity, and that his affidavit is inadmissible to justify his conduct during the separation."

In Carter v. State, 78 Miss. 348, 29 So. 148, the juror was absent from the courtroom and separated from his fellows "for some minutes unattended by any officer of the court." The Court said: "The departure of the jury from the bar in this case unattended by an officer subjects it to a suspicion of improper influence, which was not removed, and a verdict cannot be upheld. Our court, in all the cases before it, has spoken with one voice in favor of this rule; the only one that can insure the purity of the verdict." It referred to the Organ case where only one juror was separated unaccompanied by a bailiff, then saying "With stronger reason must the separation of all the jury from the superintendence of an officer have a like effect."

However, in Cunningham v. State, 94 Miss. 228, 48 So. 297, where defendant was charged with murder, one

juror, during the night when the others were asleep, left the jury room to obey an urgent call of nature, went a few feet for that purpose, unaccompanied by a bailiff. The Court refused to reverse for that reason, saying: "* * * it is not enough for the defendant to show that possibly some person might have been with the juror and communicated with him. In the case at bar it is highly improbable that the juror saw anybody during the period of his enforced withdrawal from the body of the jury."

In Turner v. State, 176 Miss. 862, 170 So. 642, 643, a prosecution for assault and battery with intent to murder, one juror separated from his fellows and walked about two blocks to a restaurant where he purchased lunches, but he was accompanied by the deputy sheriff and communicated with no one other than the officer. The Court refused to reverse, saying: "The mere possibility that a juror has been exposed to outside influences is not sufficient to vitiate a verdict, and from the evidence in this case, it affirmatively appears that no improper influences were brought to bear on the juror; and the court committed no error in overruling the motion to set the verdict aside."

The last Mississippi case dealing with the question is Clark v. State, 209 Miss. 586, 48 So. (2d) 127, 130. This did not involve the effect of a separation of a juror from his fellows. It involved the propriety and effect of the trial judge asking the attorneys in the presence of the jury whether they should be kept together. Counsel for defendant replied that, in view of the seriousness of the case and his responsibility he did not care to waive any of the rights of his client. The case held this to be error but not reversible error under all of the circumstances of that case. However, as to the right of a defendant to have the jurors kept together, the Court said: ■ ■ "As to the dispersal of the jury, the defendant in a prosecution for felony is entitled to have the jury kept together without exception from the time it is selected

until finally discharged. Carter v. State, 78 Miss. 348, 29 So. 148. The separation of even one juror in such cases is an irregularity which will vitiate the verdict. Organ v. State, 26 Miss. 78, 1 Morr. St. Cas. 684. Even at the request of the defendant, they cannot be dispersed in a capital case. Woods v. State, 43 Miss. 364, 2 Morr. St. Cas. 1624. Exceptions have been made. (1) Where it was highly improbable that the juror in a murder prosecution saw anyone while separated. Cunningham v. State, 94 Miss. 228, 48 So. 297; (2) where the juror was necessarily separated because of illness and saw no one but a doctor during the separation. Haley v. State, 123 Miss. 87, 85 So. 129, 10 A. L. R. 462. The purpose of the requirement, as readily can be seen, is to prevent access to outside influences.''

██ █ Applying the foregoing pronouncements to the facts of the case at bar, we think the verdict and judgment herein should be reversed. The jurors here separated into different groups some two to three hundred yards apart; some inside and some outside the coffee shop. All had opportunity to, and some actually did, mingle and converse with outsiders. It is not certain an officer was in charge of any of them. It is certain none was in charge of some of them. This situation continued for at least ten minutes. Liberty is too dear to be taken under such circumstances.

We have not tried to lay down rules for guidance in all cases. We deal only with the facts and circumstances here involved. Each case must rest upon its own facts.

Nor is it necessary in this case for us to decide whether a juror can testify to support or nullify his verdict. The question is not presented. After counsel for defendant admitted what he understood the jurors proposed to be called by the State would testify, the witness McGregor, then on the stand, was withdrawn and no other juror was offered. The lower court did not rule on the admissibility of such evidence.

We desire to emphasize that we are not dealing with civil or misdemeanor cases, where separation is discretionary with the trial judge, after giving the jurors proper instructions, Prewitt v. State, 65 Miss. 437, 4 So. 346, nor with a case where the accused has consented to or acquiesced in dispersal or separation of the jury, which may be done in all cases except capital. Clark v. State, supra.

Reversed and remanded.