THOMAS, P.J.,
for the Court:
¶ 1. Todd Sisung appeals from the Circuit Court of Greene County, Mississippi his conviction of grand larceny. Sisung was sentenced to the custody of the Mississippi Department of Corrections for a term of three years and ordered to pay a fine of one thousand dollars and court costs. Feeling aggrieved, Sisung appeals on the following issues of error:
I. THE TRIAL COURT ERRED IN FAILING TO GRANT A MISTRIAL WHEN A JUROR, LEONARD SUMRALL, FAILED TO ACKNOWLEDGE DURING VOIR DIRE THAT HE WAS ACQUAINTED WITH THE VICTIM, MIKE WADE, YET ADMITTED DURING MOTION FOR MISTRIAL THAT HE WAS IN FACT ACQUAINTED WITH THE VICTIM, AFTER HE WAS EMPANELED, AND AFTER HE WAS SEEN ENGAGING IN CONVERSATION WITH THE VICTIM DURING THE NOON RECESS.
II. THE COURT ERRED IN FAILING TO GRANT A CONTINUANCE TO THE DEFENDANT WHEN ONE OF THE DEFENDANT’S WITNESSES, A MINOR, WAS THREATENED WITH PROSECUTION AND/OR PUNISHMENT BY THE MINOR’S MOTHER ON THE MORNING OF THE TRIAL.
III. THE COURT ERRED IN FAILING TO GRANT A MISTRIAL WHEN DONNA BYRD, THE MOTHER OF THE DEFENSE WITNESS, A MINOR, LOUDLY INTIMIDATED THE MINOR WITNESS ON THE DAY OF THE TRIAL AT THE COURTHOUSE AND IN A RESTAURANT, ACCUSING THE MINOR OF PREPARING TO LIE DURING THE TRIAL.
IV. THE VERDICT OF THE JURY, FINDING THE DEFENDANT GUILTY, WAS AGAINST THE OVERWHELMING WEIGHT OF THE CREDIBLE EVIDENCE AND CONTRARY TO THE LAW OF THE STATE OF MISSISSIPPI.
Finding no error, we affirm.
FACTS
¶ 2. During the early morning hours of November 15, 1995, a Yamaha Timber Wolf four-wheeler and two weed eaters were stolen from the home of Mike Wade, a school teacher, in Greene County, Mississippi. The four-wheeler was stolen from a closed shed on Wade’s property while he slept inside his house. The following morning Wade discovered that the four-wheeler was missing and called the Greene County Sheriffs Office. Deputy Roger Hillman arrived shortly thereafter and began his investigation. Wade stated that he had just bought the four-wheeler recently and that few people knew that he had the four-wheeler. Wade also stated to Office Hillman that two young men, Ronnie Ostrander and Sean Kittrell, recently asked for help with their broken-down truck late one night. Wade knew Ostran-der as a previous student. Wade allowed Ostrander to use the telephone to call for a ride. The following day either Ostrander or Kittrell and an unidentified person returned to Wade’s home and asked if they could pull the broken down vehicle to *202 Wade’s home until they could return for repairs; Wade agreed. Wade also stated that during these visits by Ostrander and Kittrell, the four-wheeler was located uncovered in his front carport.
¶ 3. Based on the information provided by Wade, Officer Hillman sought out and located Ostrander and Kittrell later that morning. After some brief questioning Officer Hillman placed Ostrander and Kitt-rell under arrest and transported them to the Greene County Sheriffs Office where they were interviewed. During the interview, Ostrander and Kittrell implicated Todd Sisung in the theft of Wade’s four-wheeler. Officer Hillman obtained an arrest warrant and proceeded to Sisung’s residence with the assistance of Officers Allen and Pugh. At approximately 12:00 noon Sisung was located near his residence building in a deer stand and arrested.
¶ 4. The Officers, Hillman, Allen, and Pugh, returned to Sisung’s residence at approximately 1:00 p.m. that same day and executed a search warrant of the premises. A Yamaha Timber Wolf four-wheeler and a red weed-eater were discovered as a result of the search of Sisung’s residence. The four-wheeler was in a sealed wooden shed approximately thirty feet from Si-sung’s residence. The shed containing the stolen four-wheeler had been nailed shut. Several four-wheeler tracks were discovered in the yard area around the residence of Sisung.
¶ 5. At trial both Ostrander and Kittrell testified for the State. Both had previously plead guilty to the theft of the four-wheeler. They testified that a discussion concerning the theft of a four-wheeler took place between themselves and Sisung at Sisung’s resident the night the four-wheeler was stolen from Wade. During the course of the conversation, Sisung offered to pay Ostrander and Kittrell if they could get a four-wheeler. Thereafter, Sisung, Ostrander, and Kittrell set out to locate a four-wheeler. After an unsuccessful attempt to locate one where Kittrell thought one could be located, the three individuals set out for Wade’s residence after Ostran-der stated that he had seen one when his vehicle had broken down.
¶ 6. Further testimony by Ostrander and Kittrell revealed that once the three reached Wade’s residence, Ostrander and Kittrell proceeded to locate the four-wheeler while Sisung covered them with a shotgun. Ostrander and Kittrell pushed the four-wheeler to the road and Ostrander and Sisung loaded the four-wheeler into their truck. All three then went to Si-sung’s residence with the stolen four-wheeler where Sisung “knifed” the ignition switch and started the four-wheeler. They then proceeded to ride the four-wheeler around the yard and up and down the drive way. Ostrander and Kittrell further testified that they were given $60 for their efforts by Sisung and then they left.
¶ 7. Sisung’s wife, Diane Sisung, offered testimony that Sisung was at home the entire night and had gone to bed at around 12:20 that night. She further testified that she did not hear any unusual noise that night. In addition to the testimony of Mrs. Sisung, Clay Simmons, Sisung’s stepson, testified that he came in from a ball game that morning and that Sisung was already asleep and that no one left the trailer for the rest of the night.
ANALYSIS
I.
THE TRIAL COURT ERRED IN FAILING TO GRANT A MISTRIAL WHEN A JUROR, LEONARD SUM-RALL, FAILED TO ACKNOWLEDGE DURING VOIR DIRE THAT HE WAS ACQUAINTED WITH THE VICTIM, MIKE WADE, YET ADMITTED DURING MOTION FOR MISTRIAL THAT HE WAS IN FACT ACQUAINTED WITH THE VICTIM, AFTER HE WAS EMPANELED, AND AFTER HE WAS SEEN ENGAGING IN CONVERSATION WITH THE VICTIM DURING THE NOON RECESS
¶ 8. Sisung alleges that the trial court committed error in denying his mo *203 tion for mistrial after a juror, who was empaneled, was seen speaking with the victim, Mike Wade, during the noon recess. During the motion for mistrial, the juror, Leonard Sumrall, admitted that he was acquainted with Wade, but had failed to acknowledge that fact during voir dire. Sumrall denied any intent of impropriety and said he just knew Wade from fifteen years ago when Wade taught him junior high physical education. Sisung maintains that this omission and the subsequent conversation between Sumrall and Wade “amounts to juror misconduct” and as such resulted in a deprivation of Sisung’s constitutional right to an impartial jury and a fair trial.
¶ 9. Sisung additionally argues that the trial court committed error in allowing the jury to separate without supervision therefore creating “prima facie evidence of irregularity and improper influence invalidating the verdict of conviction.” Sisung argues this proposition from the holding of Grimsley v. State, 212 Miss. 229, 54 So.2d 277 (Miss.1951).
¶ 10. Our standard of review in issues of juror impropriety has been “drawn by analogy to violations of the witness sequestration rule.” Esparaza v. State, 595 So.2d 418, 425 (Miss.1992); see M.R.E. 615. We will apply a “clearly erroneous” standard in reviewing the trial court’s ruling on issues of juror impropriety. Esparaza, 595 So.2d at 425; see Lewis v. State, 580 So.2d 1279, 1286-87 (Miss.1991) (involving husband of victim speaking with witness about their upcoming testimony).
¶ 11. As stated in Esparaza, the supreme court has held it error not to quash the jury when a sheriff, later called as a witness, spent the night at the same hotel as the jury. Dunn v. State, 264 So.2d 823, 825-26 (Miss.1972). In Dunn, the Mississippi Supreme Court relied on a series of cases where material witnesses had also served as bailiffs.
¶ 12. We are mindful of Perkins v. State, 244 So.2d 414, 415 (Miss.1971) that “whatever tends to threaten public confidence in the fairness of jury trials, tends to threaten one of our sacred legal institutions.” However, in the case sub judice Sisung’s argument fails upon a close review of the facts as contained in the record. It is readily apparent from the record that, once the possibility of juror impropriety by juror Sumrall was brought to the court’s attention prior to opening statements, the trial court took the steps necessary to ensure Sisung received a fair trial with a fair and impartial jury. The trial judge questioned juror Sumrall, as did Sisung’s defense counsel, about his failure to answer that he was once acquainted with Wade during voir dire and the subsequent conversation that took place between Sum-rail and Wade during the noon recess. Sumrall answered that Wade had taught him in junior high but that since his last acquaintance with Wade was over fifteen years ago he did not think that it was that important. Juror Sumrall further answered that the extent of the conversation with Wade during the noon recess was about Sumrall’s new truck and nothing more.1 When asked whether his acquaintance with Wade would influence his decision in the case, Sumrall responded that it would not influence his decision. However at Sisung’s request the trial judge excused Sumrall from the jury out of “an abundance of caution” and replaced him with an alternate.
¶ 13. In light of the precautions taken by the trial court prior to opening statements, we cannot say that the trial court was “clearly erroneous” in denying Sisung’s motion for mistrial. Any possible juror impropriety was quickly rectified prior to opening statements. This assignment is without merit.
*204 II.
THE COURT ERRED IN FAILING TO GRANT A CONTINUANCE TO THE DEFENDANT WHEN ONE OF THE DEFENDANT’S WITNESSES, A MINOR, WAS THREATENED WITH PROSECUTION AND/OR PUNISHMENT BY THE MINOR’S MOTHER ON THE MORNING OF THE TRIAL
III.
THE COURT ERRED IN FAILING TO GRANT A MISTRIAL WHEN DONNA BYRD, THE MOTHER OF THE DEFENSE WITNESS, A MINOR, LOUDLY INTIMIDATED THE MINOR WITNESS ON THE DAY OF THE TRIAL AT THE COURTHOUSE AND IN A RESTAURANT, ACCUSING THE MINOR OF PREPARING TO LIE DURING THE TRIAL
¶ 14. Sisung argues that his defense was “unreasonably hamstrung” the day of trial and that as a result the trial court erred in denying his motion for a continuance and his motion for mistrial. Although Sisung raises separate issues in his brief to this Court, he has advanced both issues under the same premise and relies on the same argument and authority upon addressing the separate issues. We similarly will address both issues together in our resolution of this matter.
¶ 15. On the day of trial Brad Byrd’s mother, Donna Byrd, placed a phone call to the Greene County Circuit Clerk’s office informing them of her belief that her son, Brad, was going to commit perjury in the Sisung’s trial. Brad Byrd was listed as a defense witness and was under subpoena. In addition to the phone call, Donna Byrd also appeared at the Greene County Courthouse and made several accusations in a “loud voice” against her son in the breezeway outside the courtroom as alleged by Sisung. Sisung further alleges that Donna Byrd followed himself, his wife, his sons, and Brad Byrd to the Pizza Inn during the noon recess. Sisung alleges that during the altercation at the Pizza Inn, Donna Byrd made additional accusations against Brad Byrd and himself to the point that she was asked to leave the establishment by the management. Si-sung argues that the conduct of Donna Byrd intimidated Brad Byrd and therefore prejudiced his defense.
¶ 16. The trial court then questioned the jury as to whether any of them had heard or witnessed any type of altercation during the noon recess without giving any specific details, to which, all members of the jury stated that they did not hear or witness any type of altercation. The trial court further inquired of the jury whether any of them had dined at the Pizza Inn during the noon recess, to which, all members stated that they had not eaten at the Pizza Inn during the noon recess. It is readily apparent from a review of the record that despite any alleged altercation, the jury remained untainted. The court then meet with both counsel in chambers without benefit of a record. Based upon the trial transcripts it is apparent that the discussion concerned the testimony of Byrd; however, a record of that discussion was not made. Following that discussion the trial court denied Sisung’s motion for continuance and his motion for a mistrial having concluded that none of the jury members had heard or witnessed any of the alleged altercations and that despite any resulting reluctance on the part of Brad Byrd to testify he was still nevertheless bound by subpoena to provide truthful and complete testimony should he be called as a witness.
¶ 17. On appeal Sisung alleges that the testimony of Brad Byrd was thwarted by the conduct of his mother Donna Byrd. Sisung argues that without an opportunity to properly address this sudden “melt down” in his defense by way of a continuance, Sisung’s defense was suddenly derailed by an unavailable witness. We are not persuaded.
*205 ¶ 18. As properly addressed by the trial court, Byrd was bound by subpoena to give a complete and truthful account in his testimony should he be called as a witness. In addition, the trial court properly noted that this issue was raised early in the proceedings and that as such ample time remained to make inquiries into Byrd’s expected testimony before he was to be called as a witness. We do note, however, that Sisung advanced the defense of alibi and produced his wife and stepson as witnesses in support of this defense. The testimony of Byrd, had he been called as a witness, logically should have fit within this defense, and as such would have been cumulative of the testimony given by Si-sung’s wife and stepson.
¶ 19. For these reasons, we cannot say that Byrd was unavailable nor can we assess the nature of his expected testimony as it was not proffered and therefore is not contained within the record as submitted to this Court on appeal. In assigning issues of error on appeal, the appellant bears the duty of providing a record of the trial proceedings wherein error is claimed. Jackson v. State, 684 So.2d 1213, 1226 (Miss.1996); Smith v. State, 572 So.2d 847, 849 (Miss.1990); Burney v. State, 515 So.2d 1154, 1160 (Miss.1987); Robinson v. State, 345 So.2d 1044, 1045 (Miss.1977). Without a complete record on appeal, we cannot properly address Sisung’s assignments of error in relation to the expected testimony of Byrd; to do otherwise would be to reach a decision based upon unsupported assumptions. This assignment is without merit.
IV.
THE VERDICT OF THE JURY, FINDING THE DEFENDANT GUILTY, WAS AGAINST THE OVERWHELMING WEIGHT OF THE CREDIBLE EVIDENCE AND CONTRARY TO THE LAW OF THE STATE OF MISSISSIPPI
¶ 20. Sisung argues that the jury’s verdict was against the overwhelming weight of the credible evidence and that as such he should be granted a new trial. A motion for a new trial tests the weight of the evidence. Butler v. State, 544 So.2d 816, 819 (Miss.1989). Our standard is clearly evident:
As to motion for a new trial, the trial judge should set aside the jury’s verdict only when, in the exercise of his sound judgment he is convinced that the verdict is contrary to the substantial weight of the evidence; this Court will not reverse unless convinced the verdict is against the substantial weight of the evidence.
Id. (quoting Russell v. State, 506 So.2d 974, 977 (Miss.1987)).
¶21. The trial court’s discretionary authority allows the setting aside of a jury’s verdict and the ordering of a new trial only where the court is “convinced that the verdict is so contrary to the weight of the evidence that to allow it to stand would be to sanction an unconscionable injustice.” Roberts v. State, 582 So.2d 423, 424 (Miss.1991) (citations omitted). Therefore, based upon a complete and careful review of the record before us, suffice it to say that the jury’s verdict was not against the overwhelming weight of the evidence. This assignment of error is without merit.
¶ 22. THE JUDGMENT OF THE GREENE COUNTY CIRCUIT COURT OF CONVICTION OF GRAND LARCENY AND SENTENCE OF THREE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND FINE OF $1,000.00 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO GREENE COUNTY.
BRIDGES, C.J., McMILLIN, P.J., COLEMAN,DIAZ, KING, PAYNE, and SOUTHWICK, JJ., CONCUR.
LEE and IRVING, JJ., NOT PARTICIPATING.